No. 87,950

State of Kansas, *Appellee,* v. Charles Everte McHenry, Jr.,
*Appellant.*
(78 P.3d 403)

Opinion filed October 31, 2003.

*Rebecca E. Woodman,* capital appellant defender, argued the cause, and *Steven R. Zinn,* deputy appellate defender, was with her on the brief for the appellant.

*William R. Ludwig,* county attorney, argued the cause, and *Carla J. Stovall,* attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

LUCKERT, J.: A jury convicted Charles E. McHenry, Jr., of rape, aggravated indecent liberties with a child, and criminal sodomy, charges which arose out of the sexual molestation of his daughter. On direct appeal, the Court of Appeals affirmed McHenry's convictions. *State v. McHenry,* No. 87,950, unpublished opinion filed January 24, 2003. This court granted McHenry's petition for review on two issues: 1) Whether the district court erred in admitting evidence of prior, uncharged allegations of sexual abuse by McHenry under the "plan" exception of K.S.A. 60-455, and 2) whether prosecutorial misconduct in closing argument denied McHenry a fair trial.

We hold that there was not an abuse of discretion in admitting the evidence, although we determine that the evidence was admissible independent of K.S.A. 60-455. We also hold that the pros-

ecutorial misconduct in closing argument did not deny McHenry a fair trial. Therefore, we affirm.

## FACTS

McHenry and his wife, Wendi, have five children: the victim and four sons, one older than the victim and three younger.

### *The November 14, 2000, Incident (Rape Charge)*

McHenry's daughter testified regarding the incidents upon which the charges were based. The daughter stated that a few days before her fourteenth birthday, while Wendi was at the grocery store and her brothers were downstairs, McHenry had taken his daughter to her room, penetrated her vagina with his finger, and rubbed her breast. The daughter testified that McHenry would do this a couple of times each week. In exchange, he would give her money, grant her privileges not allowed her siblings, or let her go places. Anytime she wanted to go somewhere, McHenry would tell her she owed him a specific amount of time alone with him. He said if she told anyone he would take away all of her privileges. Wendi was always at the store, at work, at bingo, or sleeping when these events occurred.

### *The February 9, 2001, Incidents*
### *(Aggravated Indecent Liberties and Criminal Sodomy Charges)*

A few months later, while Wendi and one brother were at bingo, McHenry told his daughter she owed him some time. He made her go up to her room while the brothers who were at home were sleeping or watching television. He then penetrated her vagina with his finger and felt her breast. After the incident, the daughter was allowed to call her boyfriend. While she was on the telephone, McHenry brought her a Kool-Aid and made her drink it. The Kool-Aid tasted funny and made her feel "weighed down." McHenry then made her go back upstairs. He undressed her, licked her vaginal area, and "fingered" her some more. A few days after that, the daughter told her brothers about the Kool-Aid, and they told their mother.

## Other Testimony

The two oldest brothers testified that a couple of times per week, when their mother was at work or at bingo, McHenry would take his daughter upstairs to her room, turn on the music, and shut the door. McHenry would tell the boys to go to the park or stay downstairs.

Wendi McHenry testified that her daughter received special treatment from McHenry and the daughter was allowed to do things her brothers were not, such as participate in sports. According to Wendi, McHenry often gave his daughter money.

Kansas Bureau of Investigation special agent William Pettijohn separately interviewed the McHenry family, except for the two youngest boys. When Pettijohn interviewed McHenry, at first McHenry denied ever being alone with his daughter in her room. He stated that he tried not to be alone with her because of the previous allegations of sexual abuse. Later, McHenry admitted that his daughter had called him to her bedroom on possibly two occasions. When he got there, his daughter told him "he could do anything to her that he wanted as long as she got what she wanted to do." McHenry said his daughter took his hand, put it down the front of her pants on the outside of her underwear, and laid her hand on his crotch on the outside of his clothing. McHenry got scared and left the room. When asked how much further the contact had gone, McHenry responded, " 'Well, it didn't go as far as me fingering her or eating her out.' " At that time, Pettijohn had not told McHenry about his daughter's allegation that he performed oral sex on her.

## Prior Incidents of Sexual Abuse

The State filed a pretrial notice of intent to offer evidence of prior wrongs pursuant to K.S.A. 60-455. The trial court ruled the evidence was admissible to show defendant's plan or modus operandi and instructed the jury to that effect before evidence was admitted through testimony from social worker Cindy Bowen, who had worked at Kansas Social and Rehabilitation Services. As part of its final written jury instructions, the court also gave a limiting

instruction stating that the jury was only to consider evidence of past crimes for the purpose of proving defendant's plan.

Cindy Bowen testified that in 1998, while she was a social worker in Stafford County, she spoke with the children's maternal grandmother about allegations of physical abuse by McHenry. Bowen went to the grandmother's home and interviewed the three older children. The daughter, who was then 10 years old, told Bowen about three different incidents of sexual abuse that occurred while the family lived in Oklahoma. She stated that in January 1997, while her mother was gone to the grocery store, McHenry asked the boys to go outside and play and then had the daughter go into his bedroom. The two undressed and the daughter stated that McHenry "put his finger up my private and sucked my boob." McHenry also told his daughter, "If you'll stay five more minutes, I'll give you $5."

In May 1997, McHenry and his daughter were riding in his semi truck. He pulled over at a rest area and had her get in the sleeper of the truck and take her clothes off. McHenry also undressed. Again, the daughter stated McHenry "put his finger in my private, sucked my boob." She also stated McHenry "tried to put his thing in me, but didn't. And then he peed on me."

In February 1998, the daughter stated McHenry came into her bedroom, "touched her private" and told her to get undressed. When he went to the bathroom, the daughter got up and went into the room where her brothers were. McHenry followed her, and she told him, "Get the hell away from me." Bowen relayed this information to the authorities in Oklahoma, but to her knowledge a criminal prosecution was never pursued there.

### Defense

The defense called two witnesses. The first witness was the daughter's school principal who testified about her participation in sports and the times when sports practices were held. The second witness was McHenry's first cousin, Marian Schwab. Schwab testified that the children had stayed with her on one occasion while the parents went Christmas shopping. During that visit, the daughter told Schwab that she could get anything she wanted from Mc-

Henry by saying he had "messed with" her or had done something to her sexually. The daughter said her mother and grandmother had told her that was the way you got things. Schwab stated that she told the parents about this. Wendi denied ever having had such a conversation with either Schwab or her daughter. McHenry did not testify.

During closing argument, the defense theory was that whenever the McHenrys' marriage was in trouble, Wendi and her children fabricated allegations of sexual abuse to force McHenry out of the home. Defense counsel also focused on various inconsistencies an contradictions between the family members' testimony. Additional facts regarding the prosecutor's closing argument will be included below.

### Conviction and Appeal

The jury convicted McHenry of rape, aggravated indecent liberties with a child, and criminal sodomy. McHenry timely appealed.

On direct appeal, the Court of Appeals affirmed McHenry's convictions but remanded for correction of his criminal history by deleting a juvenile adjudication. The flaw did not affect his criminal history score; therefore, no resentencing was necessary. *McHenry*, Slip op. at 9. Regarding McHenry's substantive arguments on appeal, the Court of Appeals held: 1) the trial court did not abuse its discretion in admitting evidence of the prior sexual abuse incidents; 2) the prosecutor's remarks during closing argument did not constitute misconduct; and 3) the trial court did not abuse its discretion in refusing to order a psychiatric examination of the daughter. This court granted McHenry's petition for review of the first two issues but denied his petition as to the third.

### Issue 1: Did the District Court Err in Admitting Evidence of Prior, Uncharged Allegations of Sexual Abuse by McHenry?

In ruling on the State's motion to present other crimes evidence, the trial court found that the evidence could be admitted on "what some would argue is an additional grounds [*sic*] under 60-455," *i.e.*, modus operandi. Specifically, the trial court noted the alleged

crimes always occurred when "the mother was gone to bingo or for some other reason, and the boys were told to leave."

The Court of Appeals affirmed the trial court's ruling, holding that the similarities between the prior sexual abuse incidents and the charged incidents were sufficient to uphold admission of Bowen's testimony under K.S.A. 60-455. The court found: "The sexual conduct in the incidents underlying the charges was reminiscent of the conduct underlying the earlier accusations, as were the methods by which McHenry isolated his victim." *McHenry*, Slip op. at 6-7, citing *State v. Rucker*, 267 Kan. 816, 987 P.2d 1080 (1999), and *State v. Tiffany*, 267 Kan. 495, 986 P.2d 1064 (1999).

The admission of evidence lies within the sound discretion of the trial court. On appeal, the decision to admit evidence is reviewed under the abuse of discretion standard; that is, we determine whether the decision to admit the evidence was arbitrary, fanciful, or unreasonable. *State v. Jenkins*, 272 Kan. 1366, 1378, 39 P.3d 47 (2002).

The trial court admitted the evidence pursuant to K.S.A. 60-455 which provides:

"Subject to K.S.A. 60-447 evidence that a person committed a crime or civil wrong on a specified occasion, is inadmissible to prove his or her disposition to commit crime or civil wrong as the basis for an inference that the person committed another crime or civil wrong on another specified occasion but, subject to K.S.A. 60-445 and 60-448 such evidence is admissible when relevant to prove some other material fact including motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident."

Three requirements must be satisfied to admit evidence under K.S.A. 60-455. First, the evidence must be relevant to prove one of the facts specified in the statute. Second, the fact must be a disputed, material fact. Third, the probative value of the evidence must outweigh its potential prejudice. If these requirements are met, the scope of appellate review is limited to whether the trial court abused its discretion. *State v. Higgenbotham,* 271 Kan. 582, 588-89, 23 P.3d 874 (2001).

McHenry argues that none of the facts specified in the statute was disputed and, therefore, evidence of intent, plan, or modus operandi was inadmissible. He reasons that the evidence of prior

sexual abuse incidents was offered in his case solely as propensity evidence; in other words, to enable the jury to infer that because he had committed a prior sexual crime he would be likely to commit another. Further, he cites criticism of decisions which utilize plan as a guise for propensity evidence. See Purinton, *Call it a "Plan" and a Defendant's Prior (Similar) Sexual Misconduct is In: The Disappearance of K.S.A. 60-455*, 70 J.K.B.A. 30 (Sept. 2001).

We need not address McHenry's argument regarding the applicability of the plan exception of K.S.A. 60-455 because we find the evidence was admissible independent of K.S.A. 60-455 under this court's holding in *State v. Crossman*, 229 Kan. 384, 624 P.2d 461 (1981). In *Crossman*, the defendant argued that the trial court erred in allowing the victim to testify about other uncharged instances of sexual misconduct between her and the defendant. Because the victim's veracity was the key issue in the case and questions had been raised about why she had tolerated the situation for so long without telling her mother, this court found: "The entire complex family relationship, including prior sexual encounters between [the victim] and the defendant, is highly relevant in this case." 229 Kan. at 387. This court held the evidence was admissible:

"[I]n cases of crimes involving illicit sexual relations or acts between an adult and a child, evidence of prior acts of similar nature between the same parties is admissible independent of K.S.A. 60-455 where the evidence is not offered for the purpose of proving distinct offenses, but rather to establish the relationship of the parties, the existence of a continuing course of conduct between the parties, or to corroborate the testimony of the complaining witness to the act charged." 229 Kan. at 387.

Like *Crossman*, McHenry's defense was to attack the veracity of his daughter and the other family members. McHenry's theory was that the rest of his family concocted allegations of sexual abuse in order to remove him from the home. He called a defense witness who testified that the daughter had stated she could get whatever she wanted from McHenry by claiming he had sexually abused her. Given McHenry's attack on his family's credibility, the evidence of his prior sexual abuse of his daughter falls squarely within the *Crossman* rule. The evidence showed that the relationship between

McHenry and his daughter had involved a continuing course of conduct (ongoing sexual abuse) with McHenry gaining control through the extension or withholding of privileges. The evidence provided information for the jury to consider in assessing the defense: the timing of the past complaint in the context of other family dynamics at the time; the fact that past complaints had not resulted in action by those in authority; and a long standing system of rewards which might explain the daughter's failure to come forward. Additionally, the history explains the brothers' concern when they learned of the Kool-Aid incident.

McHenry also contends that, even if the prior sexual abuse incidents would have been admissible independent of K.S.A. 60-455 under *Crossman*, the state cannot now make that argument because the evidence was not admitted at trial on that basis. He cites *State v. Jones*, 247 Kan. 537, 546-47, 802 P.2d 533 (1990), in support.

In *Jones*, the trial court admitted evidence of a prior conviction involving the defendant damaging the victim's property. This court ruled that the two offenses did not constitute a plan because no causal connection existed between them; therefore, the evidence was not admissible under the plan exception of K.S.A. 60-455. 247 Kan. at 546. The court then stated: "The trial court, however, did not admit evidence of the 1984 conviction solely under K.S.A. 60-455. Instead, the court concluded that the conviction was admissible independent of K.S.A. 60-455 to show a continuing course of conduct involving defendant's destruction of the victim's property." The court upheld the admission of the evidence under this alternative theory. 247 Kan. at 546-47.

McHenry contends that *Jones* stands for the premise that the admission of evidence cannot be upheld on appeal under a theory different from the one relied upon at trial. To the contrary, it is a well-recognized rule that a trial court's decision to admit evidence, if correct, will be upheld on appeal even though the trial court relied upon the wrong ground for its decision. *State v. Bryant*, 272 Kan. 1204, 1209-210, 38 P.3d 661 (2002). See also *State v. Gray*, 235 Kan. 632, 634-35, 681 P.2d 669 (1984) (trial court admitted evidence under K.S.A. 60-455 to show preparation and plan; this

court concluded evidence was admissible independent of K.S.A. 60-455 as res gestae and found no error). McHenry's reliance on *Jones* is misplaced.

We conclude the trial court did not abuse its discretion in admitting the evidence of the prior acts of sexual misconduct.

*Issue 2: Did Prosecutorial Misconduct in Closing Argument Deny McHenry a Fair Trial?*

A two-step process is used to analyze allegations of prosecutorial misconduct. First, the court must decide whether the prosecutor's comments were outside the wide latitude allowed in discussing the evidence. Second, the court must decide whether the comments constitute plain error; that is, whether the statements are so gross and flagrant as to prejudice the jury against the defendant and deny him a fair trial, thereby requiring reversal. *State v. Scott*, 271 Kan. 103, 113, 21 P.3d 516, *cert denied* 534 U.S. 1047 (2001). The facts of each case must be scrutinized in determining if a prosecutor's remarks deny the defendant a fair trial. See *State v. Rodriguez*, 269 Kan. 633, 641, 8 P.3d 712 (2000).

McHenry did not object during any portion of the prosecutor's closing argument. However, if the prosecutor's statements rise to the level of violating a defendant's right to a fair trial and deny a defendant his or her Fourteenth Amendment right to due process, reversible error occurs despite the lack of a contemporaneous objection. *State v. Lumley*, 266 Kan. 939, 964-65, 976 P.2d 486 (1999). See *State v. Davis*, 275 Kan. 107, 121-22, 61 P.3d 701 (2003).

Therefore, we must first consider whether there was misconduct. McHenry complained of three specific comments made by the prosecutor during closing argument. The Court of Appeals, however, mentioned only the following statement by the prosecutor:

"[T]he State of Kansas would submit that the testimony shows that [McHenry] made a mistake. He didn't consider his [boys'] concern for their sister. We would ask you to consider how these two boys felt time after time after time, the evidence that you heard when this defendant, Charles McHenry, took his thirteen-or fourteen-year-old daughter upstairs [and] locked the door." *McHenry*, Slip op. at 4.

McHenry argued this comment was tantamount to an improper "golden rule" argument. The Court of Appeals stated: "We see nothing that qualifies as 'outside the considerable latitude' allowed the prosecutor in this case. The prosecutor merely emphasized the mixed feelings the brothers experienced, which they had described." *McHenry*, Slip op. at 8.

McHenry argues the Court of Appeals' conclusion was erroneous. He contends the above comment was improper because it was irrelevant and was intended to inflame the jury by appealing to its sympathies and prejudices. McHenry also contends the comment was improper as a "golden rule" argument.

A "golden rule" argument is the suggestion by counsel that jurors should place themselves in the position of a party, a victim, or the victim's family members. Such arguments are generally improper and may constitute reversible error. See *Walters v. Hitchcock*, 237 Kan. 31, 33, 697 P.2d 847 (1985). The reason "golden rule" arguments are not permitted is because they encourage the jury to depart from neutrality and to decide the case on the improper basis of personal interest and bias. See 75A Am. Jur. 2d., Trial § 650.

In this case, the jury was not asked to place themselves in the position of the victim's brothers. Further, the comment was relevant and stated a legitimate argument separate from invoking the jury's sympathy. When read in context, the prosecutor urged the jury to consider why the brothers had finally approached their mother regarding the conduct. We agree with the Court of Appeals that the argument was within the considerable latitude allowed in arguing the evidence.

Additionally, McHenry complains that the prosecutor improperly vouched for the credibility of the child witnesses, particularly the daughter, and stated a personal opinion regarding the defendant's guilt. At oral argument before this court, the prosecutor conceded that he had improperly announced his belief that "[t]hese kids aren't lying" and improperly expressed his opinion that "[t]his defendant is guilty." The Court of Appeals did not specifically address these arguments.

This court has repeatedly reminded prosecutors that, while they may argue the facts which a jury should consider in assessing cred-

ibility and determining guilt, the Kansas Rules of Professional Conduct (KRPC) unequivocally state that an attorney shall not state a personal opinion as to the credibility of a witness or as to the guilt or innocence of the accused. KRPC 3.4 (2002 Kan. Ct. R. Annot. 416) (fairness to opposing party and counsel). "The point of not allowing a prosecutor to comment on the credibility of a witness *is that expressions of personal opinion by the prosecutor are a form of unsworn, unchecked testimony*, not *commentary on the evidence of the case*." *State v. Pabst*, 268 Kan. 501, 510, 996 P.2d 321 (2000).

Given the prosecutor's concession that there was misconduct, we must consider whether the comments constitute plain error; that is, whether the statements are so gross and flagrant as to prejudice the jury against the defendant and deny him or her a fair trial, thereby requiring reversal. *State v. Sperry*, 267 Kan. 287, 308-09, 978 P.2d 933 (1999). Although this court has refrained from adopting a specific test for determining whether a defendant was prejudiced by improper comments, on many occasions this court and the Court of Appeals have utilized factors first set out in *State v. Thompson*, 221 Kan. 176, 183, 558 P.2d 93 (1976). These factors are: (1) whether the conduct was gross and flagrant; (2) whether the comments show ill will by the prosecutor; and (3) whether the evidence against the defendant was so overwhelming that the prosecutor's misconduct would have had little weight in the minds of the jurors. *Pabst*, 268 Kan. at 508. In applying these factors, the comments must be considered in the context of the argument and the entire case. See, *e.g.*, *State v. Finley*, 273 Kan. 237, 245, 42 P.3d 723 (2002); *State v. Broyles*, 272 Kan. 823, 832-33, 36 P.3d 259 (2001).

In this case, immediately before vouching for the credibility of the children, the prosecutor's argument reminded the jury of its role in assessing credibility:

"Think about the evidence. Where is there any evidence that [the daughter] would come up with these allegations every time the marriage was in trouble? There is no evidence to that. You must base your decision solely on the evidence as it came from the witness stand."

The prosecutor then discussed the testimony of the adult witnesses, before moving to the children. After stating the children were not lying, the prosecutor continued with an appropriate argument:

"Children lie to get themselves out of trouble or to make themselves look good. Ladies and gentlemen of the jury, did [the daughter] look like she was having fun on that witness stand?

"Was that making herself look good when she had to sit up here before twelve strangers, fourteen years old? What did Mr. Christians call her? A precocious—some bad word about knowing all this sex stuff. It's your duty to judge the demeanor, the credibility of the witnesses.

"Ask yourself and use your common sense, from your observations of her while she was testifying . . . ."

Thus, the bulk of the prosecutor's argument was directed toward reminding the jury of its role in assessing credibility. The full context of the argument diffused emphasis on the one reference which can be construed as vouching for credibility and, given the context of the prosecutor's remarks, did not unduly distract the jury from its responsibility. See *United States v. Young*, 470 U.S. 1, 18, 84 L. Ed. 2d 1, 105 S. Ct. 1038 (1985). Similarly, the prosecutor's comment expressing a personal opinion regarding guilt was a single comment in the midst of a summary of the evidence which the prosecutor argued should lead the jury to find the defendant guilty. The comments in this case crossed the line of fair comment but, given the context, were not gross or flagrant.

Nor is there evidence of ill will by the prosecutor. In past cases, we have noted a prosecutor's indifference to a court's rulings, mocking of a defendant, or repeated acts of misconduct are evidence of ill will and the lack of such conduct shows there was no ill will. See, *e.g., State v. Washington*, 275 Kan. 644, 672, 68 P.3d 134 (2003) (few comments in lengthy transcript does not show ill will); *State v. Abu-Fahker*, 274 Kan 584, 613-15, 56 P.3d 166 (2002) (mocking defendant's accent shows ill will); *State v. Douglas*, 274 Kan. 96, 108, 49 P.3d 446 (2002) (noting that ill will can be found when prosecutor ignores prior, sustained objection). In this case, there is nothing to reflect ill will on the part of the prosecutor.

Finally, we must view the record as a whole to determine whether the error would likely have had any weight in the minds of the jurors. Although there was no physical evidence tying McHenry to the crimes, there was substantial evidence, including his own implicitly inculpatory statements. Further, we find significant the context of the argument in which the prosecutor reminded the

jury of its duty to weigh the evidence and determine the credibility of the witnesses. These warnings, especially when coupled with the arguments of the defendant and the instructions of the court, largely, if not totally, diffused the impact of the comments. In the context of the record as a whole, the prosecutor's brief, isolated comments, whether considered singularly or cumulatively, would likely have had little weight in the minds of the jurors. McHenry was not denied a fair trial.

Affirmed.

BEIER, J., not participating.

WAHL, S.J., assigned