NOT DESIGNATED FOR PUBLICATION

No. 117,898

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ROWDAN R. ROSSING,
*Appellant*.

MEMORANDUM OPINION

Appeal from Clay District Court; MERYL D. WILSON, judge. Opinion filed June 1, 2018. Affirmed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Richard E. James*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BRUNS, P.J., HILL, J., and WALKER, S.J.

PER CURIAM: Rowdan R. Rossing was convicted in January 2017 by a jury in Clay County, Kansas, for one count of possession of methamphetamine, a felony, and one count of possession of drug paraphernalia, a misdemeanor. He appeals his convictions, alleging prosecutorial errors, an erroneous jury instruction, and cumulative errors. Finding no errors requiring reversal, we affirm.

FACTS

On May 6, 2016, the Clay County Sheriff's Department executed a search warrant at a residence in Clay Center, Kansas. There were two individuals on the front porch, but as officers approached one of the residents—Jason Thatcher—he went inside the house, then immediately came back outside. Upon entering the house, deputies observed Rossing in the living room, packing a small bag. He was wearing shorts, but no shirt.

When one of the deputies patted down Rossing, he felt something in the right pocket of his shorts, and asked Rossing what it was. Rossing replied it was a syringe, and took it out of his pocket. During the pat-down, Rossing put his hand in his left pocket, pulled out a sock, and attempted to hide it. The officer testified that "[Rossing] was trying to palm it in his hand, to keep me from seeing it." When the officer asked Rossing what it was, Rossing did not answer but stated he was going to throw the sock away. The deputy took the sock, as well as the syringe, and escorted Rossing outside. When the deputy opened the sock, which had been tied shut with a hair tie, he found a second syringe inside, as well as a clear "bulb-style" glass pipe and a small baggie with a crystalline substance. The search of the home revealed other drugs and paraphernalia.

Rossing was subsequently charged with one count of possession of methamphetamine, a severity level 5 drug felony, and one count of possession of drug paraphernalia, a class A nonperson misdemeanor. Rossing was charged based only on the items found on his person, not on the other drugs and related items seized from the residence.

Rossing was convicted of both counts after a January 2017 jury trial. He was later sentenced to 34 months' imprisonment for possession of methamphetamine and to 12 months in the county jail for possession of drug paraphernalia. Rossing filed a timely notice of appeal.

ANALYSIS

*Claims of prosecutorial error*

Rossing first claims the prosecution committed two essential errors during closing statements warranting reversal of his convictions: diluting the State's burden of proof and offering a personal opinion of Rossing's guilt and making an improper golden rule argument by asking jurors to decide the case based on their personal opinions rather than applying the law to the facts. Rossing contends that he was prejudiced by the prosecution's errors and his convictions must be overturned.

Whenever a claim is asserted that any act of a prosecutor has denied a criminal defendant his or her due process rights to a fair trial, the claim and resulting judicial inquiry will be referred to as a claim of "'prosecutorial error.'" *State v. Sherman*, 305 Kan. 88, Syl. ¶ 5, 378 P.3d 1060 (2016). Appellate review of an allegation of prosecutorial error involves a two-step process simply described as error and prejudice. 305 Kan. 88, Syl. ¶ 6. First, an appellate court must decide if the prosecutorial acts complained of fall outside the wide latitude afforded prosecutors to conduct the State's case and obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial. Then, if an appellate court finds there was an error, the next step is to determine whether the error prejudiced the defendant's due process rights to a fair trial. At this level of inquiry, the State must demonstrate there is no reasonable possibility that the error contributed to the verdict. 305 Kan. at 109. "Every instance of prosecutorial error will be fact specific, and any appellate test for prejudice must likewise allow the parties the greatest possible leeway to argue the particulars of each individual case." 305 Kan. at 110.

Rossing made no objections to the State's closing argument at trial; however, such an objection is not necessary to preserve the issue for appeal. A claim of prosecutorial

3

error—based on comments made during voir dire, opening statements, or closing argument—will be reviewed on appeal even when a contemporaneous objection was not made at the trial level. *State v. Anderson*, 294 Kan. 450, 461, 276 P.3d 200 (2012). Further, a misstatement of controlling law must be reviewed on appeal, regardless of a timely objection at trial, to protect a defendant's right to due process. *State v. Gunby*, 282 Kan. 39, 63, 144 P.3d 647 (2006).

Prosecutors are given wide latitude in language and manner or presentation of closing arguments, so long as the argument is consistent with the evidence. This includes the freedom to craft arguments that include reasonable inferences based on the evidence. *State v. Pabst*, 268 Kan. 501, 507, 996 P.2d 321 (2000). A prosecutor's closing remarks fall outside the wide latitude given when he or she comments on facts not in evidence, makes comments to divert the jury's attention from its role as a fact-finder, or makes comments that serve no purpose other than to inflame the passions of the jury. *State v. Stimec*, 297 Kan. 126, 128, 298 P.3d 354 (2013). Rossing argues that the prosecution misstated the law and thus diverted the jury's attention from its role as a fact-finder, and that it made comments to inflame the passions and biases of the jury.

Rossing claims the prosecutor injected his personal opinion into the State's closing argument. He also contends the prosecutor's specific analogy in its closing argument diluted the State's burden by misstating the law. Specifically, Rossing objects to the following remarks by the prosecutor in his closing:

> "I would submit to you, ladies and gentlemen, that Mr. Rossing knew well what was in the sock.
> "If you come home and see one piece of chocolate cake missing and ask the kids, and they go I don't know what happened to that cake and one of them has chocolate all over his face and the other one is clean, what do you think? You're gonna believe the kid that possessed the cake. Right? The one that had the icing on his face. You know that he possessed the cake."

4

Rossing argues that these comments are outside the wide range of latitude given to prosecutors because they offered the prosecutor's opinion and diluted the State's burden of proof by misstating the law.

Rossing contends the language, "I would submit to you . . . Mr. Rossing knew well what was in the sock," was an unsworn factual assertion regarding the issue of his knowledge. "A prosecutor may not state his or her personal belief as to the reliability or credibility of testimony given at a criminal trial." *State v. Brinklow*, 288 Kan. 39, Syl. ¶ 6, 200 P.3d 1225 (2009). In response, the State argues that this passage of the prosecutor's closing argument, if read in context, demonstrates that the comment is directional and not inappropriate. After a careful review of the whole record, we find the State's argument to be persuasive.

"It is permissible for a prosecutor to argue that the evidence demonstrates a defendant's guilt. . . . It is necessary, however, for a prosecutor to say something akin to 'the evidence shows defendant's guilt' in order to make a statement merely directional and not an expression of the prosecutor's personal opinion." *State v. Peppers*, 294 Kan. 377, 399-400, 276 P.3d 148 (2012). Our Supreme Court has held that the words "I submit" are an appropriate directional phrase. *State v. Corbett*, 281 Kan. 294, 316, 130 P.3d 1179 (2006).

But even if the prosecutor here had not used the specific directional language, "I would submit to you," in the context of the rest of the closing argument the comment "Rossing knew well what was in the sock," was not improper. See *State v. De La Torre*, 300 Kan. 591, 612, 331 P.3d 815 (2014) (holding nondirectional comment not improper in context of the rest of argument). Immediately preceding the excerpt which offends Rossing, the prosecutor stated:

"If he didn't know what was in that sock, why did he care? Why didn't he let the officer pull it out of his pocket? Why did he try to hide it from the officer? I would submit to you, ladies and gentlemen, that Mr. Rossing knew well what was in the sock."

By looking at this additional passage, it becomes clear to us that the prosecutor referenced evidence from the trial regarding Rossing's conduct immediately before the contraband was seized: He cared about what was in his pocket; he did not let the officer pull it from his pocket; and he attempted to conceal it from the officer. The jury could properly infer from these circumstances that Rossing demonstrated evidence of a guilty mind.

The prosecutor's directional comment in his closing argument did not amount to injecting his opinion into that argument. Even without the directional language, in the context of the closing argument as a whole, we conclude the prosecution did not make an error.

Next, Rossing argues that the prosecution's chocolate cake analogy was a misstatement of the law because it diluted the State's burden of proof and omitted the required elements of intent and knowledge.

"'Possession' means having joint or exclusive control over an item with knowledge of and intent to have such control or knowingly keeping some item in a place where the person has some measure of access and right of control." K.S.A. 2017 Supp. 21-5701(q). Rossing contends that the language, "[t]he one that had the icing on his face. You know that he possessed the cake," told the jury to convict Rossing simply because the contraband was found on his person.

Once again, context matters. The closing argument's passages surrounding the offending language cited by Rossing are actually several paragraphs long. This section of

6

the closing argument summarizes testimony from law enforcement officers regarding the specifics of what they did, what they observed, and what they saw Rossing do. Immediately following the offending passage, the prosecution articulated its burden: "The State's burden here is to show to you that Mr. Rossing possessed it . . . . He pulled it from his pocket, ladies and gentlemen. He tried to hide it from the officer." The prosecution also went on to identify and discuss several jury instructions relevant to the jury's inquiry: the instruction regarding the State's burden, the instruction regarding the elements of possession, and the instruction regarding the jury's use of common knowledge and experience.

In fact, the chocolate cake analogy did not simply analogize possession with having frosting on one's face. The analogy also asked the children what happened to the cake. Both children said, "I don't know," but one had evidence of knowing what happened to the cake because he had icing on his face. In the prosecutor's analogy, the icing on the child's face coupled with his claim he did not know what happened to the cake was circumstantial evidence of his guilty mind. Evidence at trial in this case demonstrated not just that Rossing had the contraband on his person, but that he attempted to conceal it and then discard it. The chocolate cake analogy accurately encompassed the facts established by the evidence at trial and included the elements of knowledge and intent.

In the context of both the offending passage and the surrounding portions of the prosecution's closing argument, the State did not dilute its burden or make a misstatement of the law. We find that the closing argument, when viewed as a whole, did not misstate the law.

For his next allegation of prosecutorial error, Rossing contends that the prosecutor made an improper "golden rule" argument in his closing remarks by asking the jurors to

7

put themselves in Rossing's place and ask themselves what they would have done in his situation.

A golden rule argument is the suggestion by counsel that jurors should place themselves in the position of a party, a victim, or the victim's family members. Such arguments are generally improper and may constitute reversible error. *State v. McHenry*, 276 Kan. 513, 523, 78 P.3d 403 (2003), *disapproved on other grounds by Gunby*, 282 Kan. 39. "The reason 'golden rule' arguments are not permitted is because they encourage the jury to depart from neutrality and to decide the case on the improper basis of personal interest and bias." *McHenry*, 276 Kan. at 523. A victim's mental state is usually irrelevant to a defendant's guilt. See *De La Torre*, 300 Kan. at 610-11. However, Rossing acknowledges that his mental state in this case was relevant to the issue before the jury. See K.S.A. 2017 Supp. 21-5701(q).

The specific language which offends Rossing reads:

"If Mr. Thatcher had run in and said hey Rowdy, take this, and the cops would have followed right in behind that, and Mr. Rossing had pulled [the sock] out of his pocket, and the officer said what's that, **would you have said I don't know, Jason [Thatcher] just gave it to me, or would you say oh, it was something I was gonna throw away, as you were trying to hide it?**" (Emphasis added.)

The State responds that there was no intent on the part of the prosecution to inflame the passions or prejudice of the jury. The State contends that in the context of the surrounding language, there was no error:

"*I would ask you, when you think about Jury Instruction No. 7, which tells you what my burden is, and Jury Instruction No. 11, the intent instruction that says did he intend to possess it, did he knowingly possess it*. If Mr. Thatcher had run in and said hey Rowdy, take this, and the cops would have followed right in behind that, and Mr. Rossing pulled

8

[the sock] out of his pocket, and the officer said what's that, would you have said I don't know, Jason [Thatcher] just gave it to me, or would you say oh, it was something I was gonna throw away as you were trying to hide it?" (Emphasis added.)

The State argues that in the context of the surrounding language directing the jury to the instructions, Rossing's argument that the prosecution was trying to divert the jury from the evidence and controlling law is without foundation. Once again, we find the State's argument regarding context to be persuasive. We note that the balance of the prosecution's closing argument addressed Jury Instruction No. 5 regarding the jurors' right to use their common knowledge and experience as they consider the facts.

Rossing appears to concede that golden rule invitations to juries are not always improper. In his brief, Rossing notes that "if the golden rule argument leads the jury to decide the case based upon their own biases and prejudices, instead of applying the facts to the law, it is improper." In this case, the prosecution's hypothetical question based on alternate events that were not part of the evidence (Thatcher handing something to Rossing, and Rossing telling police about it) was obviously meant to create a contrast to the actual fact pattern. Although the prosecutor's phrasing of the hypothetical situation may have been somewhat confusing to the jury, we believe it was ultimately irrelevant to the jurors' assessment of Rossing's state of mind at the time the contraband was discovered.

Unlike a typical golden rule argument, the prosecution's question here was not an invitation for the jury to identify with a party in order to affect the verdict. The prosecution asked the jury to acknowledge that the evidence presented only one scenario, and that scenario was indicative of Rossing's knowledge and intent. The jury was already tasked with making a determination regarding those elements. The prosecution did not encourage the jurors to depart from their neutral role and decide the case on the improper

9

basis of personal interest and bias but asked them to look at the event as directed by the evidence and instructions given by the court.

Given the surrounding passages of the prosecution's closing argument where the jury's attention was drawn to the instructions and the law, and because the question did not affect the jurors' neutral role, we cannot conclude the question posed by the prosecution amounted to an impermissible golden rule argument. See *De La Torre*, 300 Kan. at 612.

The wide latitude afforded to prosecutors in discussing the evidence during closing arguments "'includes at least limited room for rhetoric and persuasion, even for eloquence and modest spectacle. It is not opening statement; it is not confined to a dry recitation of the evidence presented.'" *State v. Kleypas*, 305 Kan. 224, 319-20, 382 P.3d 373 (2016), *cert. denied* 137 S. Ct. 1381 (2017). Based on the record, in context, the prosecutorial acts complained of do not fall outside the wide latitude afforded prosecutors to conduct the State's case. See *Sherman*, 305 Kan. at 109; *Pabst*, 268 Kan. at 507. The State did not commit a prosecutorial error by injecting an opinion into its closing argument, misstating the law, or making an improper golden rule argument.

Rossing follows up his allegations of prosecutorial errors by asserting that those alleged errors resulted in prejudice and denied him a fair trial. However, since we have found no prosecutorial errors, there can be no showing of prejudice. But in the interest of completeness, we will take up and discuss his contentions of prejudice.

Rossing contends that the only issue at trial was whether he intentionally and knowingly possessed the items in the sock. He argues that, because the prosecutorial errors relate directly to the issue of his mental state, the State cannot meet its burden to prove there was no reasonable possibility he was not prejudiced.

10

"In evaluating prejudice, we simply adopt the traditional constitutional harmlessness inquiry demanded by *Chapman* [*v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)]. In other words, prosecutorial error is harmless if the State can demonstrate 'beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict.' *State v. Ward*, 292 Kan. 541, Syl. ¶ 6, 256 P.3d 801 (2011), *cert. denied* 565 U.S. 1221 (2012)." *Sherman*, 305 Kan. at 109.

Assuming—for the sake of discussion—that the prosecutor's remarks were in error, we believe the trial evidence, as a whole, shows any error in the prosecutor's argument would have been harmless.

The State demonstrated beyond a reasonable doubt that any potential errors did not affect the outcome of the trial in light of the entire record. See *Sherman*, 305 Kan. at 109. The evidence of Rossing's guilt, both direct and circumstantial, was substantial and convincing. The officers not only saw Rossing remove the sock containing the contraband from his pocket, they also saw him try to conceal it from them. The contraband was on his person, and his effort to hide and discard it was circumstantial evidence of his knowledge and intent. The evidence, coupled with the prosecutor's numerous references to the jury instructions, demonstrates beyond a reasonable doubt that any erroneous closing comments were harmless. We find no prejudice that would have adversely affected Rossing's due process rights to a fair trial.

*Erroneous jury instruction*

Rossing's second issue on appeal contends that the district court gave an erroneous jury instruction. Specifically, he argues that the instructions indicated possession of methamphetamine and paraphernalia could be committed intentionally *or* knowingly, rather than intentionally *and* knowingly.

11

Rossing acknowledges that his defense counsel requested the erroneous jury instructions. The State concedes that the jury instructions were legally insufficient but argues that this issue should be dismissed under the doctrine of invited error.

Whether the doctrine of invited error applies presents a question of law, and appellate courts generally exercise unlimited review over questions of law. *State v. Hankins*, 304 Kan. 226, 230, 372 P.3d 1124 (2016). A litigant may not invite error and then complain of the error on appeal. *State v. Verser*, 299 Kan. 776, 784, 326 P.3d 1046 (2014). But see *State v. Hill*, 271 Kan. 929, 934, 26 P.3d 1267 (2001) (structural errors so intrinsically harmful, automatic reversal required), *abrogated on other grounds by State v. Voyles*, 284 Kan. 239, 160 P.3d 794 (2007).

Rossing argues that the jury instructions violated his constitutional rights, and so the invited error doctrine only bars review if defense counsel made a calculated decision to gain a tactical advantage by choosing the instruction. He claims his defense counsel inadvertently, rather than strategically, invited the erroneous instruction.

In support of this contention, Rossing claims that because the instruction actually reduced the State's burden of proof, the decision to submit the instruction could not be part of any sound trial strategy. He relies on *State v. Hargrove*, 48 Kan. App. 2d 522, 293 P.3d 787 (2013), for this principle. In *Hargrove*, a panel of this court opined that "[n]o sound strategy could warrant a defendant assuming a heavier burden of proof than required under the law in establishing a defense." 48 Kan. App. 2d at 551. In our case, the State contends that there is value in planting a viable appellate issue in the event of conviction. *Hargrove* supports this perspective, as well:

> "Although we fail to see any overt tactical advantage to Hargrove in the elements instruction his lawyer tendered and the district court gave, we cannot say the instruction must have been the product of inadvertence or inattention. There may be factors

12

informing the choice that are obscure or wholly invisible in the appellate record. [Citation omitted.]" 48 Kan. App. 2d at 551.

The State also observes that the record in this case, as in *Hargrove*, "is virtually devoid of any indication of inadvertence or inattention on the part of [Rossing]."

It is true that the invited error doctrine is inapplicable when a constitutional error is structural. See *Hill*, 271 Kan. at 934. But not all constitutional errors qualify for the "structural" label. In fact, very few do. A short list of structural errors includes: total deprivation of counsel, lack of an impartial trial judge, denial of the right to self-representation at trial, violation of the right to a public trial, and an erroneous reasonable doubt instruction. See *United States v. Marcus*, 560 U.S. 258, 263, 130 S. Ct. 2159, 176 L. Ed. 2d 1012 (2010); *Verser*, 299 Kan. at 784. In this case, defense counsel replaced an "and" with an "or" in the instructions. This does not appear to us to rise to the level of a structural constitutional error sufficient to warrant a place on the above short list.

However, we need not determine whether the defect in Rossing's jury instruction is a structural constitutional error, nor need we determine whether the erroneous request was strategic, which would bar consideration under the invited error doctrine, or inadvertent, which would allow consideration under the invited error doctrine.

Our Supreme Court has held that under the invited error doctrine a defendant cannot challenge an instruction on appeal, even by alleging it to be clearly erroneous under K.S.A. 2017 Supp. 22-3414(3), when there has been an on-the-record agreement to the wording of the instruction at trial. *Peppers*, 294 Kan. at 393.

In this case, defense counsel not only provided proposed jury instructions to the district court that the court then used at trial, the parties reviewed the jury instructions on the record. The district court sought approval or objections from defense counsel as to

13

each instruction. Defense counsel made no objections. The district court read Jury Instruction No. 11 aloud, in relevant part: "The State must prove that the defendant possessed methamphetamine intentionally or knowingly." Defense counsel stated he had no objections to this language. These were the same instructions the district court read to the jury.

Defense counsel proposed the erroneous jury instruction to the district court in anticipation of trial and affirmed the wording of the instruction on the record after the State rested its case. The district court then used the defense's proposed instructions in instructing the jury. Under these circumstances, we hold that the invited error doctrine applies. Thus, Rossing contentions lack merit.

*Cumulative error*

As his final issue on appeal, Rossing alleges cumulative errors in this case, which he contends warrant reversal of his convictions.

Under our caselaw, the test for cumulative error is whether the totality of the circumstances establish that the defendant was substantially prejudiced by cumulative errors and was denied a fair trial. In assessing the cumulative effect of errors during the trial, an appellate court examines the errors in the context of the entire record, considering how the trial judge dealt with the errors as they arose; the nature and number of errors and their interrelationship, if any; and the overall strength of the evidence. *State v. Holt*, 300 Kan. 985, 1007, 336 P.3d 312 (2014); see *State v. Walker*, 304 Kan. 441, 457-58, 372 P.3d 1147 (2016).

However, a claim of cumulative error cannot prevail when the record fails to support the errors a defendant raises on appeal. *State v. Marshall*, 303 Kan. 438, 451, 362 P.3d 587 (2015). In this case, as we discussed above, the record fails to support any of the

errors Rossing raises in his appeal. Even if an error is found, a single error cannot constitute cumulative error. See *State v. Houston*, 289 Kan. 252, 277, 213 P.3d 728 (2009).

Affirmed.