No. 62,610

STATE OF KANSAS, *Appellee*, v. DARWIN GENE DAMEWOOD, *Appellant*.

(783 P.2d 1249)

677

Opinion filed December 8, 1989.

*James G. White*, of Olathe, argued the cause, and *Gary G. Miller*, of Topeka, was with him on the brief for appellant.

*Michael C. Hayes*, county attorney, argued the cause, and *Robert T. Stephan*, attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

HOLMES, J.: Darwin Gene Damewood appeals from his convictions by a jury of one count of aggravated kidnapping (K.S.A. 21-3421), two counts of indecent liberties with a child (K.S.A. 21-3503[1][b]), three counts of aggravated criminal sodomy (K.S.A. 21-3506[a]), and two counts of aggravated sexual battery (K.S.A. 21-3518[1][b]). Two counts of assault (K.S.A. 21-3408) were dismissed by the State at the end of the evidence. Defendant raises several issues on appeal, none of which has merit. We affirm.

The sordid facts of this case will not be set forth in any more detail than necessary for an understanding and discussion of the issues on appeal. The events giving rise to the charges herein occurred September 2, 1987, and October 3, 1987.

Defendant met J.A., a fourteen-year-old boy, at a farm auction in the late summer of 1987. At that time defendant discussed with J.A. and his stepmother the possibility that J.A. might be available to assist the defendant in a beekeeping operation. About three weeks later the defendant contacted J.A.'s family and made arrangements for J.A. to assist him in moving some bees which he had bought at the auction. Defendant picked up J.A. at his home on the evening of September 2, 1987, and, after picking up the bees, drove one and one-half to two miles and stopped the truck. Defendant induced J.A. to remove his shirt so he could cool off and then began to massage J.A.'s back. J.A. became frightened and asked to be taken home, but defendant said it was too early and then pulled J.A.'s pants down. Defendant forced J.A. to engage in oral sex and other sexual activities. Thereafter, defendant drove J.A. home and on the way admonished the boy that if he told anyone about what had happened, the defendant would punish him. Defendant paid J.A. nine dollars and told the boy's father that J.A. was a good worker. J.A. testified that he did not tell his father what had happened because he was "scared and embarrassed." As a result of the September 2, 1987, incident, the defendant was convicted of one count each of indecent liberties with a child, aggravated criminal sodomy, and aggravated sexual battery.

J.A. did not see the defendant again until October 3, 1987. In the meantime, however, defendant sent J.A. a book on bees, wrote to him, and solicited J.A. to help him look for locations in the Valley Falls area which would be good for placing bees. Defendant made arrangements for J.A. to accompany him and picked up J.A. on October 3, 1987. J.A. did not tell his parents about the previous episode, and did not refuse to go with the defendant, because he was scared. Defendant drove J.A. to a secluded area in the country where he parked, ordered J.A. out of the car, and made him get undressed. J.A. was forced to participate in oral and anal sex, mutual masturbation, and other sexual acts. Thereafter J.A. was allowed to get dressed and, although he did not know how to drive, he obtained the car keys from the defendant, got into defendant's car, and managed to drive the car home. The defendant ran after the car and obtained a ride with a man driving a truck. They followed J.A. until he arrived at his home, at which time J.A. ran into his house and told his family that defendant had raped him. By this time the defendant had arrived at J.A.'s house, and when J.A.'s family started to call the sheriff, the defendant ran from the house and escaped in his car. The defendant was convicted of one count each of aggravated kidnapping, indecent liberties with a child, and aggravated sexual battery, and two counts of aggravated criminal sodomy for the events which occurred on October 3, 1987.

Although defendant did not testify and did not present any affirmative evidence, his version of what took place on the two occasions was presented in the State's case through statements he had made to police officers and other witnesses. While defendant admitted being with J.A. on the two occasions, he denied any sexual contact or activity took place between them.

The first issue asserted on appeal is that the court committed error in permitting testimony by M.S.R. of a similar encounter with the defendant which occurred in the summer of 1983, and in instructing the jury relative to the testimony. The evidence was admitted pursuant to K.S.A. 60-455 and to corroborate the testimony of J.A. M.S.R. met the defendant in 1983 when M.S.R. was thirteen years old. M.S.R. was interested in beekeeping, bought some bees from the defendant, and then was induced to work for defendant. At the time of trial, M.S.R. was

eighteen years old and in the twelfth grade. M.S.R. testified to acts performed by the defendant upon him in the summer of 1983 which were strikingly similar to those which took place with J.A. Without going into detail, we conclude that the testimony of M.S.R. met all of the requirements for admission under K.S.A. 60-455 and that its probative value outweighed any prejudice it might have created with the jury. *State v. Faulkner*, 220 Kan. 153, Syl. ¶ 1, 551 P.2d 1247 (1976).

Before M.S.R. began his testimony, the trial judge gave a preliminary instruction to the jury, stating:

"Ladies and Gentlemen of the Jury: The testimony about to be introduced is to be considered by you for only a limited purpose. This evidence has to do with other acts and occurrences of a nature of which are to be considered by the jury to the extent that you find may be material in bearing on the motive, opportunity, intent, preparation, plan and knowledge of the Defendant and the credibility of the testimony of the alleged victim, [J.A.] The testimony is not admitted for any purpose having to do with the guilt or innocence as to the particular acts claimed in the charges against the Defendant. At the close of the trial you will be given complete instructions relative to the law that applies to this case and you will be instructed in detail as how to consider this evidence. Thank you."

The State then presented M.S.R. as its final witness in the State's case. Defense counsel objected vigorously to the admission of the testimony and also asserts, pursuant to K.S.A. 60-445, that it should not have been allowed due to unfair surprise.

At the time of final instructions to the jury, instruction number 15 provided:

"Evidence of prior and independent sexual offenses has been admitted and is to be considered solely by you only for its value, if any, as circumstances bearing upon the purpose of proving the Defendant's intent, plan of operation and to corroborate the testimony of the complaining witness as to the acts charged. This evidence should be considered along with all of the other evidence for this purpose only and should be disregarded for any other purposes."

K.S.A. 60-455 provides:

"Subject to K.S.A. 60-447 evidence that a person committed a crime or civil wrong on a specified occasion, is inadmissible to prove his or her disposition to commit crime or civil wrong as the basis for an inference that the person committed another crime or civil wrong on another specified occasion but, subject to K.S.A. 60-445 and 60-448, such evidence is admissible when relevant to prove some other material fact including motive,

opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident."

Before evidence of a prior crime or civil wrong is admitted, the court should hold a hearing before trial or, if during trial, outside the presence of the jury to determine the relevancy and probative value of the proposed evidence as it relates to one or more of the eight elements set forth in K.S.A. 60-455. *State v. Marquez*, 222 Kan. 441, Syl. ¶ 1, 565 P.2d 245 (1977). In the present case, the court held such a hearing during trial and determined that the testimony of M.S.R. was admissible. In its final instruction to the jury, the evidence was limited to the issues of "intent, plan of operation and to corroborate the testimony of the complaining witness."

Defendant asserts that intent and plan were not appropriate reasons for the admission of the testimony and that corroboration is not one of the elements recognized by the statute. He asserts intent was not an issue in this case because the mere doing of the acts suffices to show intent. He also asserts the evidence was not admissible to show plan because no connection existed between the alleged acts with M.S.R. and those with the victim in this case.

In *State v. Fisher*, 222 Kan. 76, 85, 563 P.2d 1012 (1977), we held evidence of prior similar sexual acts was admissible to prove intent and "plan or design." In *State v. Crossman*, 229 Kan. 384, 624 P.2d 461 (1981), the defendant was convicted of two counts of indecent liberties with a child and one count of aggravated sodomy. Evidence of prior sexual acts with the same child was admitted independent of K.S.A. 60-455 under our rule that in cases involving illicit sexual activity with a child evidence of prior similar acts between the same parties is admissible independent of K.S.A. 60-455. However, in doing so the court commented, "This is not to say that evidence of prior acts could not have been introduced pursuant to K.S.A. 60-455 to establish intent." 229 Kan. at 387 (citing *Fisher*). We conclude that the testimony of M.S.R. was properly admitted to show intent.

We are also of the opinion it was admissible to show the plan or modus operandi of the defendant. Admission of evidence under 60-455 to show plan has been upheld under at least two theories. In one the evidence, though unrelated to the crimes charged, is

admitted to show the modus operandi or general method used by a defendant to perpetrate similar but totally unrelated crimes.

In *State v. Morgan*, 207 Kan. 581, 485 P.2d 1371 (1971), the court held that the testimony of two women showing defendant raped them "under somewhat similar circumstances" to that of the prosecutrix was admissible under K.S.A. 60-455 as showing intent and plan, among other statutory factors. 207 Kan. at 582.

The same result was reached in *State v. Hampton*, 215 Kan. 907, 910, 529 P.2d 127 (1974), in which two women testified defendant attempted to have sex with them and another testified defendant succeeded. In reaching its conclusion, the court explained:

"The offenses concerning which the other women testified bear a marked similarity to the instant case in that the respective victims were choked or strangled, although not mortally. Further likenesses appear. In one of the other episodes, the defendant used a knife, as here, and in yet another he offered, after the act, to pay for intercourse in the future. Although issues going to identity, knowledge, absence of mistake, etc., were not present in this trial, the force displayed on similar occasions had a material bearing as to the intent with which the defendant approached the victim in this case, and his plan of procedure should he encounter opposition." 215 Kan. at 909-10.

In the present case, there was testimony through various State's witnesses that defendant denied all sexual activity with J.A. The testimony of M.S.R. of the events which occurred between him and the defendant in 1983 was strikingly similar to the method and plan the defendant used with J.A., even to the use of specific language and statements as well as specific actions of the defendant.

The rationale for admitting evidence of prior unrelated acts to show plan under K.S.A. 60-455 is that the method of committing the prior acts is so similar to that utilized in the case being tried that it is reasonable to conclude the same individual committed both acts. In such cases the evidence is admissible to show the plan or method of operation and conduct utilized by the defendant to accomplish the crimes or acts. See *State v. Masqua*, 210 Kan. 419, 423, 502 P.2d 728 (1972), *cert. denied* 411 U.S. 951 (1973).

Another line of cases has held evidence of prior crimes or acts is admissible to show plan where there is some direct or causal connection between the prior conduct and the crimes charged.

See *State v. Gourley*, 224 Kan. 167, 170, 578 P.2d 713 (1978); *State v. Marquez*, 222 Kan. 441, at Syl. ¶ 4.

We conclude that, under the facts of this case, it was not error to admit the testimony of M.S.R. for the purpose of proving intent and plan pursuant to K.S.A. 60-455.

Next, defendant asserts it was error to admit the testimony of M.S.R. for the purpose of corroborating the testimony of J.A. The trial court admitted the testimony for such purpose, independent of K.S.A. 60-455. The State concedes that K.S.A. 60-455 contains no such exception but contends that the evidence was admissible independent of 60-455. In doing so, the State relies upon *State v. Crossman*, 229 Kan. 384, wherein we held:

"In cases of crimes involving illicit sexual relations or acts between an adult and a child, evidence of prior acts of similar nature between the same parties is admissible independent of K.S.A. 60-455 where the evidence is not offered for the purpose of proving distinct offenses, but rather to establish the relationship of the parties, the existence of a continuing course of conduct between the parties, or to corroborate the testimony of the complaining witness as to the act charged." Syl. ¶ 1.

As defendant points out, the holding was limited to acts "between the same parties." In *Crossman*, the child victim testified to sexual relations between her and her stepfather. Here, the prior incident occurred between the defendant and M.S.R., a third party. Subsequent cases addressing the rule of *Crossman* have also dealt with prior acts between the complaining witness/ victim and defendant. See *State v. Moore*, 242 Kan. 1, 7-9, 748 P.2d 833 (1987); *State v. Green*, 232 Kan. 116, 120-21, 652 P.2d 697 (1982); *State v. Wood*, 230 Kan. 477, 479-80, 638 P.2d 908 (1982).

The State concedes that the admission of such evidence, independent of K.S.A. 60-455 for purposes of corroboration, has been limited to cases involving prior acts between the victim and the accused. However, it asks that we expand the rule to encompass similar acts by a defendant with a third party. This we decline to do. Such an expansion of the exceptions to K.S.A. 60-455 would, for all practical purposes, eliminate the general rule that evidence of prior crimes or civil wrongs is generally inadmissible except under the statutory exceptions. In *State v. Taylor*, 198 Kan. 290, 292-93, 424 P.2d 612 (1967), this court found that

corroboration was not a basis for admission of testimony under K.S.A. 60-455 and specifically disapproved such language in an instruction. We conclude the court erred in instructing the jury that the evidence could be considered "to corroborate the testimony of the complaining witness."

As a part of his objection to the admission of the testimony of M.S.R. for purposes of corroboration and the instructions relating thereto, the defendant contends that the broad "shotgun" instruction given prior to the admission of the testimony and the final instruction constitute reversible error. The State contends that any error as a result of the two instructions is harmless error. We agree with the State. The initial instruction, although overly broad, specifically advised the jury that complete instructions would be given at the close of the trial and that such instructions would be more specific in explaining the consideration to be given the testimony of M.S.R. The later instruction did limit the effect of the pretestimony instruction and negated the "shotgun" language of the first instruction.

K.S.A. 60-261 provides:

"No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."

Here, the error in admitting the testimony of M.S.R. for the purpose of corroborating the testimony of J.A. and the instruction to that effect constituted, in our opinion, harmless error. We have determined the evidence was properly admitted under K.S.A. 60-455, the evidence against the defendant was overwhelming, and the error in the instruction could not, in our opinion, have affected the jury's verdict in this case. The State's case was not based solely on circumstantial evidence but upon the direct testimony of the victim J.A. and other witnesses, and physical evidence found at the scene of the October 3, 1987, crimes. The direct evidence was supported by additional circumstantial evidence. The only evidence presented by the defendant

was testimony of a fingerprint expert that she could find no fingerprints on a piece of physical evidence found at the scene of the acts which took place October 3, 1987. The error was harmless.

Next, in connection with the testimony of M.S.R., the defendant asserts that it should have been excluded under K.S.A. 60-445, which reads:

"Except as in this article otherwise provided, the judge may in his or her discretion exclude evidence if he or she finds that its probative value is substantially outweighed by the risk that its admission will unfairly and harmfully surprise a party who has not had reasonable opportunity to anticipate that such evidence would be offered."

On February 23, 1988, the State sought to endorse the name of M.S.R. as an additional witness and also provided defense counsel with a copy of the police report on the M.S.R. incident later that day. As a part of the hearing, the court and the defendant were advised of the nature of the proposed testimony of M.S.R. The trial did not begin until February 29, 1988, and M.S.R. did not testify until March 3, 1988. Defendant claims the late endorsement constituted unfair surprise under K.S.A. 60-445 and thus the testimony should not have been allowed. While defendant raised this argument in a motion during trial and subsequently in his motion for new trial, he made no such objection at the motion to endorse additional witnesses on February 23, where the trial court specifically stated the "sole issue" was whether the endorsement would constitute "surprise or prejudice at this date in the trial." Defendant did not seek a continuance and made no attempt to interview M.S.R. prior to trial although he had ample time to do so. The defendant, of course, was fully aware of the M.S.R. incident and the police investigation of the matter, although apparently he had not advised his counsel of the earlier acts with M.S.R. There was no undue surprise shown here which would justify exclusion of the evidence under K.S.A. 60-445. The endorsement of additional witnesses is a matter of judicial discretion and will not constitute a basis for reversal absent proof of an abuse of discretion. *State v. Costa*, 228 Kan. 308, Syl. ¶ 4, 613 P.2d 1359 (1980). We find no abuse of discretion here.

Finally, in connection with the testimony of M.S.R., the defendant asserts error because he was denied an in-camera voir dire examination of the witness on the third day of trial. Defendant claims he was entitled to examine the witness outside the presence of the jury because of the prejudicial nature of the testimony and the limited time he had to interview M.S.R. We find no error. As stated previously, defense counsel had several days prior to trial to interview M.S.R. and made no attempt to do so. Defense counsel had been furnished a police report of the M.S.R. incident and knew the nature of the testimony to be presented. The ruling on such a request lies within the sound discretion of the trial court and we find no abuse here.

The next issue asserted by the defendant is that the trial court should have instructed the jury that aggravated sexual battery is a lesser included offense of aggravated criminal sodomy and indecent liberties with a child. Defendant relies upon *State v. Hutchcraft*, 242 Kan. 55, 61-62, 744 P.2d 849 (1987), for his assertion that aggravated sexual battery is a lesser included offense of indecent liberties with a child. The argument, however, ignores the fact that this portion of *Hutchcraft* was overruled by this court in *State v. Fike*, 243 Kan. 365, 757 P.2d 724 (1988), based upon the same statutes under which defendant was charged in this case.

In *Fike* the court concluded that aggravated sexual battery was not a lesser included offense under K.S.A. 21-3107(2)(d) because it required the additional element of lack of consent and because neither the factual allegations of the complaint charging indecent liberties nor the evidence "adduced" at trial to prove this crime would require proof of consent. 243 Kan. at 373.

The same reasoning would apply to the aggravated criminal sodomy charge. First, the crime does not require lack of consent. Second, while the evidence at trial actually showed J.A. refused to engage in sodomy and defendant then forced him to do so, it would not have been necessary for such evidence to be adduced at trial or proven to convict of aggravated criminal sodomy. As the court stated in *Fike* with regard to indecent liberties, "age is the controlling factor, not whether the victim did or did not actually consent." 243 Kan. at 373. We conclude that aggravated sexual battery is not a lesser included offense of either aggravated

criminal sodomy or indecent liberties with a child. This issue lacks merit.

Next, the defendant contends there was insufficient evidence to support the charge of aggravated kidnapping.

"Where defendant claims insufficiency of the evidence in a criminal case, an appellate court is required to review all the evidence in the light most favorable to the prosecution in determining whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt." *State v. Buckland*, 245 Kan. 132, Syl. ¶ 5, 777 P.2d 745 (1989).

Defendant argues that there could be no aggravated kidnapping as a matter of law because there was no kidnapping and no bodily harm. The charge was based upon the October 3, 1987, incident, and the complaint and jury instructions charged that the aggravated kidnapping was accomplished by deception. Defendant does not indicate why deception did not exist as a matter of law and provides no support for his argument that, because J.A. had access to open fields, J.A.'s alleged ability to escape precluded an initial taking by deception.

"Where a defendant is charged with aggravated kidnapping by deception under K.S.A. 21-3421, the State must prove as one of the elements of the crime that the taking or confinement was the result of the defendant's knowingly and willfully making a false statement or representation, express or implied, pertaining to a present or past existing fact." *State v. Holt*, 223 Kan. 34, Syl. ¶ 1, 574 P.2d 152 (1977).

Here, J.A. and his parents testified that defendant hired J.A. to assist the defendant in locating suitable areas for the placement of bees. On this pretext, J.A. was induced to accompany the defendant to an isolated area where the commission of the crimes, without the risk of detection, was facilitated. The deception necessary under the statute and as defined in K.S.A. 21-3110(5) was clearly present.

Defendant also asserts there could be no aggravated kidnapping as there was no evidence of bodily harm to J.A. In *State v. Bourne*, 233 Kan. 166, 168, 660 P.2d 565 (1983), we held that rape and indecent liberties constitute the bodily harm for aggravated kidnapping. In *State v. Chears*, 231 Kan. 161, Syl. ¶ 3, 643 P.2d 154 (1982), the court held that "[f]orcing a kidnap victim to commit sodomy constitutes the infliction of 'bodily harm' as that term is used in the aggravated kidnapping statute, K.S.A.

21-3421." Defendant contends that the cases are distinguishable because the victims in *Bourne* and *Chears* "suffered from actual bodily injury." While the facts in *Bourne* indicate the child victim had pain and bleeding in her vaginal area, the court's analysis does not mention this as a factor in reaching its conclusion. In *Chears* there is no showing that the victim suffered any physical injury as asserted by the defendant. The long-established rule is that rape or sodomy is sufficient to establish the "bodily harm" necessary in aggravated kidnapping. Here, J.A. testified the defendant forced him to participate in various acts of sodomy. The evidence was sufficient to support the conviction of aggravated kidnapping.

Next, the defendant asserts that the jury instructions were not specific enough to instruct the jury as to which acts it should consider in connection with each alleged crime. Defendant admits in his brief that there was evidence of at least five acts on each date which could constitute sexual crimes. We agree that the evidence amply supported the crimes charged and our review of the instructions indicates no error. The jurors were correctly instructed on each element of each crime charged and were specifically instructed that each crime charged was a separate and distinct offense which should be considered separately from all other charges. Defendant also asserts the instructions on aggravated sexual battery and indecent liberties with a child "were vague, confusing and deprived the Defendant of a fair trial." The instructions set forth all of the necessary elements of the crimes charged, were based upon PIK Crim. 2d, and are correct. They are neither vague nor confusing. We find no merit to this point.

The next issue is that the trial court erred in not granting the defendant's requested instruction on the right to remain silent. The instruction given was PIK Crim. 2d 52.13, and defendant concedes that "failure of the trial court to give the requested instruction is not considered prejudicial and not reversible error." Defendant contends it would have been better to give his requested instruction which was an expanded form based upon *Lakeside v. Oregon*, 435 U.S. 333, 55 L. Ed. 2d 319, 98 S. Ct. 1091 (1978). See comment to PIK Crim. 2d 52.13. The instruction given is admittedly sufficient and no error has been shown.

Next, the defendant asserts that the State failed to prove that the charges based upon the September 2, 1987, events took place in Jefferson County and therefore the charges should have been dismissed for failure to prove venue.

K.S.A. 22-2602 provides: "Except as otherwise provided by law, the prosecution shall be in the county where the crime was committed." In *State v. Pencek*, 224 Kan. 725, 585 P.2d 1052 (1978), the court held:

"As a general rule venue is a question of fact for the jury to determine in the trial of the case in chief. Venue may be established by proof of facts and circumstances introduced in evidence from which the place or places of commission of the crime or crimes may be fairly and reasonably inferred." Syl. ¶ 5.

J.A. testified that, after loading the bees, he and defendant drove down the road "about a mile and a half" toward Valley Falls, which is in Jefferson County. J.A. then testified on cross-examination that later he and Sheriff Dunnaway could not find the exact spot because all the roads were alike. Detective Sergeant Orin Turner, of the Jefferson County Sheriff's Department, testified that in an interview with defendant the defendant stated he and J.A. had driven one and one-half to two miles south of the farm when they stopped to cool off. Such a location would have been in Jefferson County.

Sheriff Dunnaway also testified about the location of the September 2 incident. He had taken J.A. to the area in an attempt to find the location, and after they left the farm where defendant and J.A. picked up the bees, they traveled south, then drove east, and then turned around and drove west on one of the county roads. They then drove further south before turning back north to a county road one mile south of the Atchison County line. They then proceeded east one mile to a church and then approximately one-half mile south to a location J.A. said looked like the place where it happened. This spot was approximately one and one-half miles inside Jefferson County.

On cross-examination, defense counsel elicited that J.A. had told the sheriff that they stopped about a mile to a mile and a half from the place he and defendant picked up the bees and the location J.A. selected was about two and three-quarter miles from the place they picked up the bees.

The sheriff also testified that Jefferson County is only a quarter of a mile south of the farm where defendant and J.A. picked up the bees, and in defendant's statement to the officers the defendant revealed that he and J.A. "traveled approximately one and a half to two miles south of the farm" and then stopped. This, coupled with J.A.'s testimony that they had headed towards Valley Falls, was sufficient evidence for the jury to reasonably infer that the incident occurred in Jefferson County even though J.A. was not completely certain about the "exact spot." We conclude there was sufficient evidence for the jury to find that the September 2, 1987, crimes took place in Jefferson County.

Finally, the defendant asserts that the cumulative effect of all his asserted errors substantially prejudiced the defendant and denied him a fair trial. *State v. Williams*, 235 Kan. 485, Syl. ¶ 10, 681 P.2d 660 (1984). The only error which has been shown was the instruction on the 60-455 evidence and we found that to be harmless. Under these circumstances there is no cumulative error.

The judgment is affirmed.

SIX, J., not participating.