No. 88,897

STATE OF KANSAS, *Appellee,* v. EARNEST W. OVERTON, *Appellant.*
112 P.3d 244

Opinion filed June 3, 2005.

*Richard Ney,* of Ney, Adams & Sylvester, of Wichita, argued the cause and was on the briefs for appellant.

*Kristi L. Barton,* assistant district attorney, argued the cause, and *Nola Foulston,* district attorney, and *Phill Kline,* attorney general, were with her on the briefs for appellee.

The opinion of the court was delivered by

*Per Curiam*: Defendant, Earnest W. Overton, appeals his convictions for aggravated indecent liberties and rape. Overton asserts the district court: (1) lacked jurisdiction to prosecute him because the statute of limitations had run; (2) erroneously admitted K.S.A. 60-455 evidence; (3) erroneously allowed the jury to use transcripts of recorded phone conversations during deliberations; (4) failed to question jurors regarding a remark made by a spectator; (5) improperly allowed the prosecutor to question the defendant's wife regarding a privileged communication; and (6) failed to apply the proper sentencing guidelines.

Overton worked as an eighth-grade science teacher at a middle school in Sedgwick County. Overton separately befriended three female 14-year-old students, G.B., T.R., and A.D. Each of the girls confided in Overton about her problems at home and babysat for Overton's children. Several years after the girls had graduated from middle school, each alleged that Overton had kissed and separately fondled each of them at school and raped each of them in his home.

Overton was charged with rape and aggravated indecent liberties with each girl. The charges pertaining to A.D. were dismissed at the preliminary examination because the statute of limitations had run. At trial, a jury convicted Overton of rape and aggravated indecent liberties with G.B. and acquitted him of the charges related to T.R.

Overton appealed his convictions and his sentence. The Court of Appeals affirmed Overton's convictions and sentences in an unpublished opinion filed December 5, 2003. This court granted Overton's petition of review.

### Jurisdiction to Prosecute

Overton asserts that his convictions must be reversed because the district court lacked jurisdiction to prosecute him. Overton claims that the State failed to commence prosecution for the crimes of which he was convicted within the statute of limitations when it did not prepare and deliver an arrest warrant to the sheriff for execution. An appellate court has the right to determine if a district

court has jurisdiction of the matter appealed. *State v. James*, 276 Kan. 737, 744, 79 P.3d 169 (2003).

To support his argument, Overton points out that K.S.A. 2004 Supp. 21-3106(11) provides in part:

"A prosecution is commenced when a complaint or information is filed, or an indictment returned, and a warrant thereon is delivered to the sheriff or other officer for execution. No such prosecution shall be deemed to have been commenced if the warrant so issued is not executed without unreasonable delay."

Overton then asserts that *State v. Washington*, 12 Kan. App. 2d 634, 752 P.2d 1084, *rev. denied* 243 Kan. 781 (1988), interpreted 21-3106 and held that if the delay in executing a warrant is unreasonable, the delay shall be included in determining whether a prosecution was commenced within the statute of limitations. Overton argues that if a nonserved warrant defeats the statute of limitations in *Washington*, the failure to issue a warrant is also fatal.

First, we note that Overton's reliance on *Washington* is misplaced. The basis for the *Washington* decision was failure to timely serve a warrant that had been issued within the statute of limitations. Here, there was never a warrant issued for Overton's arrest because he was arrested by an officer who had probable cause to believe Overton had committed a crime. A complaint was filed, and Overton's first appearance was held prior to the expiration of the statute of limitations of the crimes charged in this case. Therefore, *Washington* does not apply.

The determination of whether the State properly commenced its prosecution of Overton requires a review of criminal procedure statutes. The criminal procedure statutes are set forth in Chapter 22 of the Kansas Statutes Annotated and are referred to as the Kansas Code of Criminal Procedure (Code). K.S.A. 22-2101 *et seq.* The Code governs the proceedings in all criminal cases in the district courts and "shall be construed to secure simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay." K.S.A. 22-2102; K.S.A. 22-2103.

After an investigation, a Wichita detective arrested Overton on July 6, 2001, for rape and aggravated indecent liberties for his acts with G.B. That arrest was without a warrant and was based on

probable cause pursuant to K.S.A. 22-2401(c)(1). After his arrest, Overton was booked into jail; posted bond; was released on July 9, 2001; and was ordered to appear on a day certain. On July 12, 2001, the State filed a "Complaint/Information," charging Overton with rape and indecent liberties with G.B. The case number for the charges regarding G.B. is 01CR1633. Overton does not claim that his arrest without a warrant in that case was illegal.

On July 13, 2001, while on bond in this case, Overton was arrested for charges of rape and indecent liberties with T.R. A complaint on T.R.'s charges was later filed as case number 01CR1800. Overton remained in the custody of the sheriff for the second group of charges until July 17, 2001.

On July 16, 2001, while still in custody for the T.R. charges, Overton made his first appearance in case number 01CR1633 for the charges related to G.B. Overton appeared with retained counsel. The complaint regarding G.B.'s charges was served on the defendant. The court again released Overton on his bond for the 01CR1633 charges by G.B. and ordered him to appear on July 30, 2001, for a preliminary hearing. Because Overton's first appearance on the 01CR1633 charges occurred while he was in custody on the subsequent charges, the court did not issue a warrant or summons on the 01CR1633 charges.

Under the circumstances of this case, the district court's procedure comports with the purpose of the Code. The issuance of a warrant or summons for the arrest of a defendant already in custody on other charges is not required by the Code.

Although K.S.A. 22-2302(1) requires a magistrate to issue a warrant or a summons after determining that there is probable cause supporting a complaint, the issuance of a warrant or summons is not required for commencing a prosecution pursuant to K.S.A. 22-2301(1). K.S.A. 2004 Supp. 22-2401(c)(1) provides that a law enforcement officer can arrest a person when the officer has probable cause to believe that the person has committed or is committing a felony. Once an arrest has been made without a warrant, the person arrested must be taken before the nearest available magistrate without unnecessary delay and a complaint filed forthwith. K.S.A. 2004 Supp. 22-2901(1). The accused may be released on bond after

his or her first appearance before a magistrate, pending a preliminary examination or trial. K.S.A. 2004 Supp. 22-2802(1). In this case, Overton was arrested by a peace officer without a warrant because the officer had information that Overton had committed a felony.

We note that a complaint is a "written statement under oath of the essential facts constituting a crime." K.S.A. 22-2202(8). K.S.A. 22-2301(a) states that a prosecution is commenced when the complaint is filed. K.S.A. 22-2301(1) specifically provides:

> "Unless otherwise provided by law, a prosecution shall be commenced by filing a complaint with a magistrate. A copy of the complaint shall forthwith be supplied to the county attorney of the county and a copy thereof shall be furnished to the defendant or said defendant's attorney upon request."

The purpose for issuing a warrant or summons is to provide the accused with actual notice of the charge or charges against him or her and to insure that the accused appears before the court for further proceedings. See K.S.A. 22-2304 (form of warrant or summons). Both of those goals were accomplished when, as required by his bond, Overton voluntarily appeared for his first appearance without a warrant or summons being issued in this case. Overton has failed to show a violation of the Code or any prejudice resulting from the court's failure to issue a warrant or summons.

## Admission of K.S.A. 60-455 Evidence

Next, Overton argues that the trial court erroneously admitted the testimony of A.D. in violation of K.S.A. 60-455. Although evidence of prior crimes and other civil wrongs is inadmissible to prove a person's propensity to commit crime, thereby implying that he or she committed the crime at issue, K.S.A. 60-455 allows the admission of such evidence when that evidence is relevant to prove some other material fact, including motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Before evidence of prior crimes may be admitted pursuant to K.S.A. 60-455, three requirements must be met. "First, the evidence must be relevant to prove one of the facts specified in the statute. Second, the fact must be a disputed, material fact. Third, the probative value of the evidence must outweigh its po-

tential prejudice." *State v. McHenry*, 276 Kan. 513, 519, 78 P.3d 403 (2003).

A.D. testified that while she was a student at the middle school, Overton befriended her, kissed her at school, groped her at his house, and eventually raped her at his house. Overton was initially charged with aggravated indecent liberties and rape for A.D.'s allegations. The State dismissed the charges because the 5-year statute of limitations had expired. Overton argues that A.D.'s testimony was admitted into evidence to show his propensity to commit the crimes charged and, therefore, violated K.S.A. 60-455. Upon appellate review, this court's analysis is limited to determining whether the trial court properly admitted K.S.A. 60-455 evidence to show plan. See *State v. Marquez*, 222 Kan. 441, 447-48, 565 P.2d 245 (1977).

The State's motion to admit evidence of Overton's sexual conduct with A.D. requested that the evidence be admitted in this case to show plan. Prior to A.D.'s testimony, the trial court instructed the jury to consider A.D.'s testimony "solely for the purpose of proving [Overton's] plan." To support his claim that evidence regarding A.D. should not have been admitted, Overton raises several arguments. Overton's first argues that there was no "definite project" or "structured design" connecting the alleged incidents with G.B. and A.D. because there was no causal connection between the two. Overton then asserts that A.D.'s credibility was unreliable and the prejudicial effect of the evidence outweighed its probative value. Overton further argues that the evidence does not prove the facts specified in the statute, as required by K.S.A. 60-455. Finally, Overton asserts that the trial court's admission of evidence beyond the State's proffer was in error. The State presented testimony of a high school counselor who observed Overton with A.D. while A.D. was attending high school. The State also presented testimony from the principal of the high school who reported Overton's presence with A.D. at the high school to the principal of Truesdell Middle School, where Overton worked.

Relying on *State v. Jones*, 247 Kan. 537, 802 P.2d 533 (1990), and *Marquez*, 222 Kan. at 446, Overton claims that the evidence regarding A.D. was inadmissible because that evidence established

no causal link between A.D.'s allegations and G.B.'s allegations to indicate a preexisting design, plan, or scheme to commit a rape or aggravated indecent liberties against G.B. We point out that this court addressed a similar argument in *State v. Rucker*, 267 Kan. 816, 828-29, 987 P.2d 1080 (1999). In *Rucker*, the defendant was charged with aggravated indecent liberties against his daughter. The State presented evidence that Rucker had committed similar acts against his other daughter. The *Rucker* court agreed that *Marquez* did not apply but then noted that the evidence could have been admitted to show modus operandi because the crimes, although unrelated, were strikingly similar. 267 Kan. at 828-29.

In reaching this conclusion, the *Rucker* court relied on *State v. Damewood*, 245 Kan. 676, 783 P.2d 1249 (1989), which had recognized two theories for admitting prior crimes or civil wrongs to prove plan. One of the theories, as argued by Overton, requires proof of a causal connection. The other theory allows prior crimes evidence to be admitted to show modus operandi or the general method the defendant used to perpetrate similar but totally unrelated crimes. 267 Kan. at 828.

Overton fails to distinguish *Rucker*. Instead, he asserts that *Damewood* is directly at odds with *Marquez* and implies that this court should overrule *Damewood* and its progeny based on an article in Purinton *"Call it a 'Plan' and A Defendant's Prior (Similar) Sexual Misconduct Is In: The Disappearance of K.S.A. 60-455,"* 70 J.K.B.A. 8 (2001). Other than this article, Overton fails to cite a statute or case to support overruling *Damewood* or other similar cases which allowed the introduction of evidence of other crimes or civil wrongs to show a defendant's modus operandi.

We note that this court has authorized the use of such evidence pursuant to K.S.A. 60-455 for nearly 4 decades. In *State v. Poulos*, 196 Kan. 287, 291-92, 411 P.2d 689, *cert. denied* 385 U.S. 827 (1966), this court upheld the admission of evidence that tended to show Poulos' method for stealing televisions from hotel rooms. The State introduced evidence that Poulos had offered a hotel clerk money for a passkey to hotel rooms nearly 2 years after the incidents for which the defendant was being tried. This evidence corroborated the codefendant's testimony that Poulos gave him a pass-

key to steal televisions. The *Poulos* court stated: "This court has often held that evidence of independent similar offenses is admissible, under appropriate instruction as to the purpose for which it may be considered, where it tends to prove, among other things, intent, inclination, plan, scheme, method or system of operation." 196 Kan. at 291-92.

Overton does not argue that the accusations involving A.D. are not strikingly similar to those involving G.B. Nevertheless, the State highlights the similarities between both accusations. Both A.D. and G.B. were 14 years old when Overton began talking with them at school. Both girls confided in Overton about their family problems at home. Overton complimented both girls and arranged to be alone with them at the school, where he kissed and fondled each of them. Overton also hired each of the girls as babysitters and used that opportunity to get them alone in his house. Both girls testified that Overton raped them on the bed in the master bedroom. As the State argues, these similarities are striking and clearly show Overton's modus operandi or plan.

Overton next claims the probative value of that evidence is outweighed by its prejudicial effect because A.D.'s testimony lacked credibility. Essentially, Overton is asking the appellate court to reweigh the evidence and pass on the witness' credibility. An appellate court does not weigh the evidence or determine the credibility of witnesses. That function is within the province of the trier of fact. On appeal by a defendant, all questions of credibility are resolved in favor of the State. *State v. Moore*, 269 Kan. 27, 30, 4 P.3d 1141 (2000).

All evidence supporting the State's charges is prejudicial to the defendant. However, under K.S.A. 60-455, if the prejudicial effect outweighs its probative value, the evidence is inadmissible. See *McHenry*, 276 Kan. at 519. Overton's defense was to deny all of the charges and discredit G.B. We note that A.D.'s testimony corroborates G.B.'s testimony and directly counters Overton's defense. Consequently, that evidence was probative.

Overton further attacks the admission of A.D.'s testimony on the basis that the evidence does not prove one of the facts specified in the rape statute. This argument misinterprets the case law for ap-

plying K.S.A. 60-455. To be admissible, evidence must prove one of the facts specified in K.S.A. 60-455, such as intent, plan, or absence of mistake or accident, not a fact of the crime charged. *Rucker*, 267 Kan. at 824-29. Contrary to Overton's claim, A.D.'s testimony shows the defendant's plan, one of the requirements specified in K.S.A. 60-455. Proof of Overton's plan was material and corroborated G.B.'s testimony in opposition to Overton's general denial of the charges. Accordingly, this argument has no merit.

This court reviews the admission of A.D.'s testimony using an abuse of discretion standard. See *McHenry*, 276 Kan. at 519. Overton bears the burden of establishing that the trial court abused its discretion in admitting evidence under K.S.A. 60-455, and he has failed to demonstrate such an abuse in the admission of A.D.'s testimony. See *Rucker*, 267 Kan. at 823. A.D.'s testimony proves Overton's plan, one of the facts specified in K.S.A. 60-455. Overton's plan is a material fact that directly contradicts his defense and corroborates G.B.'s testimony. Likewise, the evidence is more probative than prejudicial. A.D.'s testimony survives the three-prong test required for K.S.A. 60-455 evidence. See *McHenry*, 276 Kan. at 519. The trial court did not err by admitting A.D.'s testimony.

Finally, Overton asserts that the trial court admitted evidence beyond the State's proffer by including testimony from high school personnel who witnessed interactions between Overton and A.D. We note that Overton failed to object to the admission of the testimony of these witnesses. A party must make a timely and specific objection to the admission of evidence at trial in order to preserve the issue for appeal. *State v. Jamison*, 269 Kan. 564, 569-70, 7 P.3d 1204 (2000). Overton has failed to preserve this argument.

### Transcripts of Recorded Phone Conversation

For his third claim of error, Overton argues that the trial court erred when it allowed the jury to use the transcript of the taped phone conversation between him and G.B. during its deliberations. While investigating G.B.'s allegations, Wichita detectives taped two telephone conversations between G.B. and Overton. These conversations were transcribed. At trial, the State played the taped

conversations to the jury. In addition, the State provided the jurors with copies of the transcripts to use while they listened to the tapes.

Because copies of the transcripts were not admitted as evidence, the transcripts were not given to the jurors. During deliberations, the jury requested use of the transcripts to "help with clearing up some of the muffle on the tape." The trial court instructed the jurors "that the transcripts themselves are not evidence. They are simply a tool to assist you. If you believe that the transcript is different from what you hear on the tape, the tape itself is controlling," then allowed the jury to use the transcripts during its deliberations.

Overton first argues that the tape is unintelligible in places and the transcript improperly inserts words. Specifically, Overton states that the transcript includes the passage, "Well you know I never *raped* you," even though the tape stated, "Well you know I never *fucked* you." This argument is not supported by the record. The tape does not use the word "fucked."

We have previously stated that trial courts have wide discretion in determining whether to permit the jury to use transcripts as aids while listening to recordings. An appellate court reviews such a decision using an abuse of discretion standard. *State v. Kraus*, 271 Kan. 810, 812-15, 26 P.3d 636 (2001).

In *Kraus*, the trial court allowed the State to play a CD-ROM which contained the audio recording of a conversation and a typed transcript of the conversation that could be displayed simultaneously on a computer screen. The jury listened to the audio portion while the typed version was displayed on the wall. The trial court instructed the jury that only the recorded voices could be considered as evidence and not the transcript. Assimilating cases from other jurisdictions, the *Kraus* court established six requirements for allowing the use of a transcript as an aid for understanding an audio or videotape:

"(1) [T]he audiotaped conversation is difficult to understand; (2) the transcript accurately reflects the conversation; (3) inaudible portions of the audiotaped conversation are recorded as 'inaudible' on the transcript; (4) the trial court instructs the jury that the audiotape is not evidence and that the evidence is the audio recording itself; (5) the jury is not allowed to take the transcript with them into

the jury room for deliberations; and (6) the transcript actually aids the jury in understanding the audiotaped conversation." 271 Kan. at 814.

After applying these standards, the *Kraus* court upheld the jury's use of the transcript while the tape was played in court. 271 Kan. at 815.

Here, the trial court went further and allowed the jury to use the transcript during deliberations. As a result, the trial court failed to follow the requirements set out by *Kraus*. We, therefore, must determine whether this error is harmless or whether it affirmatively prejudiced Overton's substantial rights. See *State v. Kendall*, 274 Kan. 1003, 1010, 58 P.3d 660 (2002).

When determining whether a trial error is harmless, the appellate court must scrutinize the issue in light of the whole record, not by isolating each error. *State v. Abu-Fakher*, 274 Kan. 584, 613, 56 P.3d 166 (2002). Overton has failed to demonstrate any prejudice resulting from the trial court's decision to allow the jury to use the transcript during deliberations. Accordingly, the trial court's error is harmless.

## Remark by Spectator

Overton argues that the jury verdict is tainted by a spectator's prejudicial comment overheard by the jurors. The trial judge heard a spectator in the hallway state: "He'll get his judgment when the day comes," or something to that effect, while some jurors were present. Overton requested an opportunity to question the jurors regarding the impact of the statement. The trial court denied Overton's request.

Communication between jurors and third parties is broadly termed juror misconduct. Juror misconduct is not the basis for reversal, new trial, or mistrial unless it substantially prejudices a defendant's rights. *State v. Macomber*, 244 Kan. 396, 407, 769 P.2d 621, *cert. denied* 493 U.S. 842 (1989), *rev'd on other grounds* 260 Kan. 634, 923 P.2d 67 (1996); *State v. Fenton*, 228 Kan. 658, 664, 620 P.2d 813 (1980). A trial court has discretion for determining whether to question jurors regarding such unauthorized comments. The party asserting prejudicial error bears the burden of establishing such error. *Macomber*, 244 Kan. at 407. Overton

claims that he could not meet his burden of establishing jury prejudice because the trial court denied him the opportunity to question the jurors. This argument is similar to the *Macomber* court's assessment of a similar claim.

In *Macomber*, the defendant was not allowed to question a juror who allegedly had a conversation with a witness. The *Macomber* court's decision to affirm the trial court relied on the trial judge's experience in observing the circumstances of the case and Macomber's failure to take advantage of the opportunity to obtain jurors' statements subsequent to his conviction to support his motion for a new trial. 244 Kan. at 408.

The same factors apply in this case. The trial judge personally heard the spectator's remark and, as an experienced observer of the circumstances, was qualified to determine whether the remark would have prejudiced the jury. In addition, Overton should have included affidavits of jurors who overheard the spectator's comment in his motion for a new trial and failed to do so.

Moreover, Overton fails to establish that any prejudice stemmed from the spectator's comment. Overton was charged with rape and indecent liberties with both G.B. and T.R. The jury acquitted Overton of the charges related to T.R. This indicates that the jury's verdict was based on the evidence rather than prejudice. Overton has failed to establish that his substantial rights have been prejudiced. Under the facts of this case, the trial court did not err in denying Overton's request to question jurors about the spectator's comment.

## Questioning of Defendant's Wife

Overton next asserts that the prosecutor committed misconduct by questioning Overton's wife in violation of the marital privilege. An appellate court applies a two-step analysis to determine whether a defendant was denied a fair trial because of prosecutorial misconduct. First, the court must decide if the prosecutor's questions were relevant and supported by a good faith basis for believing the asserted matter to be true. If not, the court must determine whether improper questions constituted plain error. To determine whether the prosecutor's questions are plain error, an appellate

court must evaluate whether the misconduct is so gross and flagrant as to deny the accused a fair trial, the prosecutor's remarks show ill will, or the evidence against the defendant is of such a direct and overwhelming nature that the misconduct would have had little, if any, weight in the minds of the jurors.

Overton complains of these questions by the prosecutor during the cross-examination of his wife:

"Q. After this case came about, did the defendant basically tell you—did he tell you that he had basically confessed to the—confessed on tape about having sex with [G.B.]?

"A. They tried to tell me that he confessed.

"Q. They asked you a question about on tape—No, let me withdraw that question. Didn't—Did Detective Shackelford ask you did your husband tell you that he basically confessed to having sex with [G.B.]? Do you remember that question?

"A. Yes.

"Q. Wasn't your next question, Was that on tape?

"A. Yes.

"Q. You had a pretty good idea that it might be?

"A. No.

"Q. Did you have information that he had been taped?

"A. No. My point was my children.

"Q. You need to wait for the question to be asked before you answer it. And then your next question after that was, Well, did he write it in handwriting?

"A. Yes.

"Q. Did you ask that? Mrs. Overton, have you heard the tapes of your husband having these conversations with [G.B.]?

"A. I haven't heard the tapes. I've read the transcripts."

Overton claims that the prosecutor improperly asked his wife if he had confessed to her about having sex with G.B., knowing that the answer would reveal a privileged communication. Overton argues that he was prejudiced by the prosecutor's inference that Overton had confessed to his wife.

Overton's argument misstates the context and content of the prosecutor's questions and Mrs. Overton's responses. Mrs. Overton's responses do not reveal privileged communications between Overton and his wife. Mrs. Overton's responses indicate that the police told her that her husband had confessed. The context of the prosecutor's question is made clear by the second question, when

the prosecutor specifically referred to questions Detective Shackelford asked Mrs. Overton regarding the taped conversation between Overton and G.B. The prosecutor asked Mrs. Overton about a conversation she had with Detective Shackelford, not her husband. The statement of the police officer is not subject to the marital privilege. Mrs. Overton's answer to the police officer did not reveal a privileged communication between husband and wife.

In addition, the record indicates that Mrs. Overton's response did not imply that Overton confessed to her. Although the prosecutor asked Overton's wife if the defendant had confessed to her, Mrs. Overton responded that the police told her Overton had confessed to them. This is much different than stating that Overton had confessed to her.

Overton does not claim that the questions were irrelevant or without a good faith basis, and we conclude that the questions were not improper. Although the prosecutor's questions are poorly worded, they do not invade the marital privilege. Accordingly, this claim is without merit.

### Proper Sentencing Guidelines

For his final claim of error, Overton asserts that the sentencing court applied the wrong sentencing guidelines. On July 1, 1996, the Kansas Legislature increased the sentences for severity 1 and 2 offenses. K.S.A. 1996 Supp. 21-4704; L. 1996, ch. 258, sec. 10. However, on July 1, 1999, the Legislature reduced the sentences for some severity level 1 and 2 offenses. K.S.A. 1999 Supp. 21-4704; L. 1999, ch. 164, sec. 17.

The trial court sentenced Overton to a controlling term of 184 months for his rape conviction using the 1996 amendments. See K.S.A. 1996 Supp. 21-4704. Overton argues that because he was convicted after July 1999, he should be sentenced to a controlling term of 147 months under the sentencing guidelines enacted in July 1999.

The issue of whether a sentence is illegal is a question of law over which this court has de novo review. *State v. Jones*, 272 Kan. 674, 677, 35 P.3d 887 (2001). Resolution of this issue requires the interpretation of K.S.A. 1999 Supp. 21-4704. It is a basic rule of

statutory construction that a statute operates prospectively unless its language clearly indicates that the legislature intended it to operate retroactively. *State v. Ford*, 262 Kan. 206, 208, 936 P.2d 255 (1997). Therefore, the fundamental rule for sentencing is that the person convicted of a crime is sentenced in accordance with the sentencing provisions in effect at the time the crime was committed. *State v. Anthony*, 273 Kan. 726, 730, 45 P.3d 852 (2002); *State v. Reason*, 263 Kan. 405, 951 P.2d 538 (1997); *State v. Roseborough*, 263 Kan. 378, 382-83, 386, 951 P.2d 532 (1997); *Ford*, 262 Kan. at 208-09; *State v. Riley*, 259 Kan. 774, 776, 915 P.2d 774 (1996); *State v. Fierro*, 257 Kan. 639, 649, 895 P.2d 186 (1995); *State v. Downey*, 27 Kan. App. 2d 350, 365-66, 2 P.3d 191, *rev. denied* 269 Kan. 936 (2000). This court has previously determined that the amendments to the sentencing guidelines statutes are substantive and are not applied retroactively unless the statute's language clearly indicates the legislature's intent otherwise. *Ford*, 262 Kan. at 208.

To support his argument, Overton attempts to distinguish *Anthony* and *Downey* by noting that the defendants in those cases would have received a longer sentence if the court had not applied the guidelines in effect at the time the crime was committed, thereby avoiding an ex post facto violation. However, Overton fails to argue why the court should not interpret K.S.A. 1999 Supp. 21-4704 in accordance with established precedent and fundamental rules of statutory interpretation simply because the amendment benefits rather than burdens him.

In *Reason* and *Ford*, this court specifically addressed the retrospective application of amendments to the sentencing guidelines that would benefit criminal defendants. In both cases, the defendants claimed that they should be sentenced under the 1996 amendments to K.S.A. 21-4705 (drug grid) even though their crimes were committed before the effective date of the 1996 amendments. The amendment to K.S.A. 21-4705 changed the applicable box on the grid from presumptive prison to a border box, which would have given both Reason and Ford an opportunity to avoid prison sentences. *Reason*, 263 Kan. at 416; *Ford*, 262 Kan. at 207. The *Reason* court relied on *Ford*, which concluded that

K.S.A. 21-4705 was substantive and the legislature did not specifically make the amendments retroactive. *Reason*, 263 Kan. at 416-17; *Ford*, 262 Kan. at 208. For her argument that the 1996 amendments applied to her, Ford relied on K.S.A. 1996 Supp. 21-4705(a), which provided that " '[f]or the purpose of sentencing, the following sentencing guidelines grid for drug crimes shall be applied in felony cases under the uniform controlled substances act for crimes committed on or after July 1, 1993.' " *Ford*, 262 Kan. at 208. The *Ford* court interpreted K.S.A. 1996 Supp. 21-4705(a), stating:

"[T]hat language establishes which event in the series of events from perpetration through prosecution of a crime determines whether a defendant will be sentenced under the sentencing guidelines or pursuant to previous law. It establishes commission of the crime as the controlling event, and it establishes that crimes committed on or after July 1, 1993, will be punished according to the sentencing guidelines. Hence, if the legislature had changed the date in the language prefacing the drug grid to coincide with the effective date of the 1996 amendment, the resulting provision might have been construed to restrict application of the sentencing guidelines to crimes committed on or after July 1, 1996. By not changing the date in K.S.A. 1996 Supp. 21-4705(a), the legislature maintained July 1, 1993, as the date on or after which a crime had to be committed in order for the sentencing guidelines to govern punishment." 262 Kan. at 209.

The only distinction between 21-4704(a) and 21-4705(a) is whether the crime is a drug crime or a nondrug crime. Thus, the *Ford* court's interpretation of K.S.A. 1996 Supp. 21-4705(a) applies to K.S.A. 1999 Supp. 21-4704(a) and directly contradicts Overton's argument that the similar language in K.S.A. 1999 Supp. 21-4704(a) should be interpreted to require retroactive application of the 1999 amendment to him. Accordingly, Overton's claim that he should be sentenced pursuant to the sentencing guidelines in effect at the time of his sentencing is without merit.

The judgment of the Court of Appeals affirming the district court is affirmed. The judgment of the district court is affirmed.

LOCKETT, J., Retired, assigned.