NOT DESIGNATED FOR PUBLICATION

No. 118,255

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JASE DEREK STANTON,
*Appellant*.

MEMORANDUM OPINION

Appeal from Riley District Court; MERYL D. WILSON, judge. Opinion filed August 24, 2018. Affirmed.

*Ryan J. Eddinger*, of Kansas Appellate Defender Office, for appellant.

*Bethany C. Fields*, deputy county attorney, *Barry R. Wilkerson*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., ATCHESON, J., and LORI BOLTON FLEMING, District Judge, assigned.

PER CURIAM: When a defendant is charged with certain sex offenses, including aggravated criminal sodomy, evidence of the defendant's prior "act or offense of sexual misconduct is admissible, and may be considered for its bearing on any matter to which it is relevant and probative." K.S.A. 2017 Supp. 60-455(d).

Jase Derek Stanton was charged with two counts of aggravated criminal sodomy. The State sought permission to admit evidence that Stanton had been previously

1

convicted of sexual misconduct under similar circumstances. The State also sought permission to admit similar evidence of sexual misconduct that did not lead to convictions. The district court agreed that the evidence was admissible.

At a bench trial, the issues in the case boiled down to a credibility determination between the alleged victim and Stanton. The district court found the victim more credible and found Stanton guilty of one count of aggravated criminal sodomy. The record shows that the court considered the evidence of prior sexual misconduct in reaching its finding.

Stanton appeals, arguing that the district court abused its discretion in admitting the evidence of prior sexual misconduct because the district court did not consider the correct factors in determining whether the probative value of the evidence substantially outweighed its prejudicial impact. Because we find that the district court properly weighed the evidence and did not abuse its discretion in admitting the evidence, we affirm.

FACTUAL AND PROCEDURAL HISTORY

A bench trial was held on two charges filed against Stanton of aggravated criminal sodomy, one with L.B. as the victim and one with T.J. as the victim.

Prior to trial, the State sought permission to introduce evidence pursuant to K.S.A. 2015 Supp. 60-455(d) ("evidence of the defendant's commission of another act or offense of sexual misconduct is admissible, and may be considered for its bearing on any matter to which it is relevant and probative"). The State proffered that Stanton had previously engaged in similar sexual misconduct under similar circumstances. Following a hearing, the court admitted the evidence stating:

2

"I am of the opinion that they all are sufficiently similar as to the allegations contained in the case pending now. They involved alcohol, they involved partying, usually asleep or perhaps passed out. They were all adult males, and mostly if not—well, maybe not all, but most of them were in the military. I think this clearly establishes a propensity, motive, and is admissible under our statute and case law.

"As to whether or not the probative value outweighs any undue prejudice, clearly it's prejudicial, but due to the factors which I have just limited or just—the factors which I've just stated on the record, I believe and I would find that the probative value outweighs any prejudice."

The case proceeded to trial with the following evidence presented.

L.B., then 19 years old, and his friend T.J.—both soldiers with the United States Army—went drinking in Manhattan, Kansas. They met Stanton, a 28-year-old former Marine Corps reservist, and others at a bar shortly before closing time. After the bar closed L.B. and T.J. went back to Stanton's house to continue partying.

Stanton made L.B. and T.J. some shots of liquor and some mixed drinks, which they consumed. L.B. testified that he went out to Stanton's deck and that he did not remember what happened after that until he woke up with Stanton on top of him. L.B. testified that he was dazed when he was waking up. He stated that Stanton was sitting on top of him and was sodomizing him. L.B. testified that he was unconscious when Stanton got on top of him and pulled down L.B.'s pants. L.B. testified that he did not consent to Stanton actions.

L.B. stated that he got away from Stanton and went to the bathroom. After leaving the bathroom, L.B. saw that T.J. was asleep or passed out with his pants and underwear also down to his knees. L.B. pulled T.J.'s pants back up. L.B. went to the deck and attempted to call his chain of command and some family but was unable to reach anyone.

3

According to L.B., Stanton came out to the deck but L.B. did not speak with him. Ultimately, L.B. called the Army's sexual harassment program hotline (SHARP). The SHARP representative told L.B. to meet a SHARP representative at a nearby Starbucks. L.B. went back inside and tried to wake up T.J. but was unable to do so. L.B. testified that this was unusual, T.J. would normally wake up even after similar nights of drinking. L.B. left T.J. at Stanton's to meet with the SHARP representative.

The SHARP representative took L.B. to the hospital to receive a sexual assault exam. T.J. went to the hospital separately. L.B. and T.J. both received sexual assault examinations. Swabs from both L.B. and T.J. contained a foreign DNA profile that matched Stanton.

Stanton's testimony at trial was fairly consistent with L.B.'s until the time when the sexual encounter took place. Stanton testified that L.B. was more sober than anyone else at the house. Stanton testified that he performed consensual oral sex on L.B. and that L.B. performed consensual anal sex on him. Stanton testified that after having sex L.B. went to the bathroom, came back, and appeared to be getting emotional. L.B. went out to the deck and he and Stanton talked for "the better part of a half an hour." After talking, Stanton told L.B. that he was going to go to bed. After everyone had left Stanton texted a friend that he had a "three-way while that moron Boston kid [T.J.] was asleep in the living room."

As for the evidence of Stanton's prior sexual assaults the parties stipulated that Stanton was convicted of two counts of aggravated sexual battery from events occurring in July 2008. The victim, B.C., testified at trial that, in the summer of 2008, he went to a party for a friend who was in the military and being deployed to the Middle East. Stanton was present. B.C. drank heavily and got sick. Stanton helped B.C. get to a couch and laid him down. B.C. testified that he was in and out of consciousness due to the alcohol. Stanton took B.C.'s pants off and performed oral sex on him. B.C. did not consent to the

4

oral sex. B.C. told Stanton to leave and B.C. fell asleep or passed out. Later, a friend of B.C.'s woke B.C. up. B.C. had to pull his pants up when he woke up. B.C. told his friend what happened, and the friend contacted the police, eventually leading to Stanton's conviction in 2010. Evidence related to three more sexual assaults that did not result in convictions was also presented pursuant to the district court's pretrial order allowing its admission.

Z.T., a member of the Marine Corps Reserves, testified that while deployed with Stanton he attended a Marine Corp ball in November 2005, and became intoxicated. Z.T. returned to his bunk and felt sick. He went outside to throw up a couple of times and eventually laid on the ground outside and passed out. The next thing Z.T. remembers was waking up in Stanton's room. Z.T.'s pants where down by his knees and Stanton was on top of him touching Z.T.'s penis. Z.T. pushed Stanton out of the way and returned to his room. Z.T. did not initially report the incident. A few weeks later Z.T. woke up in his room and Stanton was touching him across his hips. Z.T. reported the incident, a court martial was held, and Stanton was acquitted.

J.R., another member of the Marine Corps Reserves, testified that on December 31, 2006, he had three drinks and went to bed. J.R. woke up in the morning to discover that someone was grabbing his penis. J.R. chased the person out of his tent and noticed the person was wearing either red shorts or a red shirt. J.R. chased the person into a different tent and looked into the individual living areas of the tent. J.R. noticed that Stanton was wearing the same clothes as the person he chased. J.R. reported the incident, a court martial was held, and Stanton was acquitted.

C.C., also a member of the Marine Corps Reserves, testified that he, Stanton, and two other men were bunking together on base after a night of drinking alcohol. C.C. and another individual were sharing a bed, one other man had a bed to himself, and Stanton was sleeping on the ground between the beds. During the night Stanton reached up

5

toward C.C.'s penis multiple times and C.C. told him to stop each time. Some time passed and C.C. heard Stanton get up and approach the other man in C.C.'s bed. Stanton put his arm in between the man's legs and was rubbing them. C.C. threatened to hurt Stanton if he did not stop. C.C. reported the incident. This event was alleged to have occurred sometime in the summer or fall of 2007.

After considering the evidence, the court found Stanton guilty of one count of aggravated criminal sodomy for his actions involving L.B. and not guilty of the remaining count involving T.J., who did not appear at trial. In reaching its decision the court noted that L.B.'s and Stanton's testimony could not be reconciled. It is apparent from the court's ruling that it found L.B.'s testimony more credible. In addition, the court found that Stanton's 2010 conviction was similar to the events alleged in the present case. The court noted that the other allegations of sexual assault did not have a "great deal of probative value" because of the acquittals.

Stanton, who had a criminal history score of A under the Kansas Sentencing Guidelines, was sentenced to 592 months in prison. He timely appeals.

ANALYSIS

*The district court did not abuse its discretion by admitting evidence of Stanton's prior sexual misconduct.*

When a defendant is charged with certain sex offenses, including aggravated criminal sodomy, evidence of that defendant's prior "act or offense of sexual misconduct is admissible, and may be considered for its bearing on any matter to which it is relevant and probative." K.S.A. 2017 Supp. 60-455(d). However, the district court should consider whether the probative value of the evidence of prior sexual misconduct would be

6

substantially outweighed by its prejudicial impact. *State v. Lowrance*, 298 Kan. 274, 291, 312 P.3d 328 (2013).

A district court's decision that the probative value of evidence of prior acts outweighs the prejudicial impact of the evidence is reviewed for abuse of discretion. 298 Kan. at 291. A judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the trial court; (2) is based on an error of law; or (3) is based on an error of fact. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015). The burden to show an abuse of discretion is on the party alleging that the discretion was abused. *Lowrance*, 298 Kan. at 291.

The district court allowed the admission of evidence related to a 2010 conviction, as well as evidence of three similar incidents that did not result in convictions. After hearing the evidence, the district court judge noted that he did not believe the three incidents that did not result in convictions had much probative value, so they apparently were not considered. However, the 2010 conviction, which involved B.C., was similar to the events alleged in the present case. So it is only the 2010 conviction involving B.C. that Stanton argues was not sufficiently probative to outweigh its prejudicial effect.

There can be no dispute that evidence of the 2010 conviction was prejudicial. Most evidence presented by the State in an attempt to establish a defendant's guilt is prejudicial. See *State v. Garcia*, 285 Kan. 1, 18, 169 P.3d 1069 (2007) ("'All evidence that is derogatory to the defendant is by its nature prejudicial to the defendant's claim of not guilty.'"); *State v. Overton*, 279 Kan. 547, 554, 112 P.3d 244 (2005) ("All evidence supporting the State's charges is prejudicial to the defendant."); *State v. Williams*, 235 Kan. 485, 493, 681 P.2d 660 (1984) ("It was prejudicial as is all evidence against the accused in criminal actions. That is its purpose.").

7

We pause here to note that the parties spend a great deal of their briefs analyzing Stanton's actions against the list of factors a panel of this court found useful in *State v. Boysaw*, 52 Kan. App. 2d 635, Syl. ¶ 7, 372 P.3d 1261 (2016), *rev. granted* 306 Kan. 1321 (2017). But we note that a petition for review was granted by our Supreme Court in *Boysaw* and until such time as a decision is issued by the Supreme Court it has no force or effect. See Supreme Court Rule 8.03(j) (2018 Kan. S. Ct. R. 53). That said, we agree that nonexclusive factors to consider in evaluating the probative value of prior acts evidence should include such things as similarity, closeness in time, number of prior acts, intervening circumstances, and the necessity of the evidence beyond what is already offered at trial. See *United States v. Benally*, 500 F.3d 1085, 1090-91 (10th Cir. 2007) (cited with approval in *State v. Prine*, 297 Kan. 460, 478, 303 P.3d 662 (2013); accord *State v. Remmert*, 298 Kan. 621, 628, 316 P.3d 154 (2014), *disapproved on other grounds by State v. Jolly*, 301 Kan. 313, 342 P.3d 935 (2015). So we will examine those factors here.

The district court found that the probative value of the prior acts outweighed their prejudicial effect because they were substantially similar to the allegations in the present case noting that "[t]hey involved alcohol, they involved partying, usually asleep or perhaps passed out. They were all adult males and . . . most of them were in the military." Stanton disagrees, contending that the prior acts involving B.C. were devoid of evidence that Stanton attempted to discuss emotional issues with B.C. as he claimed to do with L.B. Stanton also argues there was no evidence that a sex act other than oral sex occurred with B.C. But Stanton's arguments are unnecessarily specific. The circumstances need not be identical, merely similar. See *State v. Bowen*, 299 Kan. 339, 349, 323 P.3d 853 (2014) (evidence was probative of Bowen's propensity to commit the acts alleged by victim because the prior crimes were sufficiently similar to victim's allegations). There are clear similarities, as outlined by the district court, between the current case and the sexual misconduct involving B.C.

The acts were fairly close in time. In fact, Stanton was still subject to registration as a sexual offender from his 2010 conviction when these acts occurred in 2015. See K.S.A. 2017 Supp. 22-4906(b)(1)(H) (duration of registration is 25 years).

Although the judge found that there was limited probative value to the acts for which there was no conviction, the judge noted in his pretrial ruling that these acts all involved nonconsensual sex with drunk or unconscious military personnel. There were four actions total, the latest of which resulted in a conviction. Moreover, the State did not simply present this evidence by way of a sterile police report, it presented the live testimony of the victim in each case to be subjected to cross-examination by Stanton's attorney.

There does not appear to be any intervening events between the prior offenses and the current offenses that would diminish the probative value of the prior offenses. An intervening circumstance seems to be something more akin to a life change in the part of the defendant. For example, in *Benally* the defendant argued that he was an alcoholic when the prior crimes occurred, but he was no longer an alcoholic when his current crime was committed. 500 F.3d at 1093. No such intervening events were present here.

Finally, the case essentially boiled down to a credibility determination between L.B. and Stanton. Additional evidence indicating that Stanton had a propensity to act as L.B. testified was both relevant and probative to the State's case. Given the physical evidence tying Stanton's DNA to L.B.'s genitals, had Stanton denied sexual intercourse completely the need for the evidence of prior sexual misconduct would be lessened, but that is not what occurred in this case. Stanton was alleging consensual sexual contact when the evidence showed he had a propensity to engage in nonconsensual sex acts with highly intoxicated or sleeping military personnel.

9

Ultimately, Stanton has failed to show that the district court abused its discretion in ruling that the evidence of his prior sexual misconduct was admissible. The ruling was not based on an error of law or fact. Moreover, the district court's conclusion regarding the weighing of the probative value against the prejudicial impact is not so far afield that no reasonable person would take the view adopted by the court. See *Marshall*, 303 Kan. at 445.

Affirmed.